# Wheeling.

## THE B. & O. RAILROAD CO. v. THE P. W. & KY. RAILROAD CO.

### Decided May 7, 1881.

1881
Spring
Special Term.

The B. & O. R.
R. Co.
v.
The P. W. &
Ky. R. R. Co.

1. The court in condemnation cases has under the statute jurisdiction of the subject-matter and parties; and its judgments, unless reversed in some appellate proceeding, would therefore be conclusive upon the parties.

2. Independent of statutory proceedings a judgment of a court of competent jurisdiction in condemnation proceedings is as conclusive upon the parties thereto, as any other judgment.

3. Before the court can enter judgment upon an application made to appropriate land to public use, the owner of the land must have notice of such application; but at whatever stage of the proceedings the owner of the land is notified to appear, after such notice he has the right to contest the appropriation of his land to the petitioner's use.

4. Where a statute authorizes a legal proceeding against any one and does not expressly provide for notice to be given, it is implied, that an opportunity shall be offered him to appear in defence of his rights, unless the contrary clearly appears.

5. In legal proceedings, where actual service cannot be had on the defendant, constructive service, if authorized by statute, will be regarded as "due process of law."

6. When the use for which private property is appropriated is public, and the Legislature has acted upon the question, the expediency or necessity of appropriating any particular property is not a subject of judicial cognizance. The property may be appropriated by an act of the Legislature, or the power of appropriating it may be delegated to private corporations, to be exercised by them in the execution of works in which the public is interested.

7. But when the sovereign power attaches conditions to the exercise of the right of eminent domain, the enquiry, whether the conditions have been observed, is a matter for judicial cognizance.

8. Where the statute in condemnation proceedings does not declare, that the judgment shall be final, the judgment of the inferior court must stand as all other judgments, and the aggrieved party is entitled to the benefit of the general law regulating writs of error and *supersedeas*.

9. While objections to the taking or condemnation of the land may be raised by exceptions to the commissioner's report, yet it is a practice, that should be discouraged.

10. In a condemnation proceeding the first question to be decided is: Shall the land be condemned for the use of the petitioner? And it is the better practice to determine this question, before the commissioners to assess value are appointed.

11. In settling this question, while it may be done without formal pleading, yet there can be no irregularity in raising the objections to the condemnation by proper pleas, as it thus states the defence with legal precision.

12. While a jury on the question of the appropriation of the land is not required by the statute, yet under section 5 of ch. 131 of the Code the court was authorized to direct, that the issues be tried by a jury.

13. As the party seeking the appropriation of the land has the affirmative of the issues upon the right to take it, such party is entitled to open and conclude the argument to the jury on that question.

14. In a condemnation proceeding a juror is not incompetent, because he is a citizen of the county, in which the land is, and liable to the county-levies, though the county may be interested in the suit.

15. It is no obstacle in the way of the appropriation of land owned by one railroad company to the use of another, that merely to prevent its condemnation, the former has put the land to a use not necessary for the proper exercise of its franchise.

16. In a condemnation proceeding the jury or court may find, that a portion of the land sought to be condemned may be taken, and the residue may not.

17. Property belonging to a railroad company and not in actual use necessary to the proper exercise of the franchise thereof may be taken for the purposes of another railroad under the general railroad law of the State.

18. An express legislative enactment is generally required, in order to take such property in use by a railroad company, except where the

1881
Spring
Special Term.

The B. & O. R. R. Co.
v.
The P. W. & Ky. R. R. Co.

1881
Spring
Special Term.

The B. & O. R.
R. Co.
v.
The P. W. &
Ky. R. R. Co.

proposed appropriation would not destroy, or greatly injure, the franchise of the company, or render it difficult to prosecute the object thereof.

19. Private property can only be taken for a public use, and no more of such property can be taken than is necessary for such use, which must be determined, when proper, from the statute on the subject and the facts appearing in the case.

20. Upon a motion for a new trial in a condemnation case, as in any other case, evidence, that is not relevant to any issue before the jury, will not be considered by the court.

21. In a condemnation proceeding, unless the owner of the land, who is before the court, in some form denies, that the land sought to be condemned is necessary for the use of the petitioner, he will be deemed in the appellate court to have waived any such objection to the condemnation.

22. A small portion of the buttress of a bridge, belonging to one railroad company and not necessary to the support of the bridge and to the exercise of the franchise of the company, may be taken for the use of another railroad company.

23. Where a State Constitution provides, that private property shall not be taken for public use without just compensation, the damage to the residue of the tract, where a part is taken, is an element of damage to be considered by the commissioners or jury, as the case may be.

24. The facts, upon which a petitioner bases his right to the removal of a case from a state to a federal court, must be made to appear to the satisfaction of the Court, before the order of removal can be made.

25. The petition becomes a part of the record and should state facts, which taken in connection with such as already appear, entitle the petitioner to a removal of the case.

26. With the question of the appropriation of the land sought to be taken the United States government, a separate sovereignty, unless it is the party seeking the condemnation, has nothing to do.

27. A foreign corporation cannot in the courts of the United States condemn the land of the citizen of a State for the use of such corporation, and if the Federal courts have not original jurisdiction for such purposes, a proceeding of that kind instituted in a State court can not be removed to the Federal courts, because the Federal courts can under no circumstances have jurisdiction of such a case.

28. A railroad corporation may have an existence in more than one State, if chartered or licensed to build its road and do business in more than one.

29. The Baltimore and Ohio Railroad Company is a domestic corporation in the state of West Virginia, and as such liable to be sued here.

30. When sued in the courts of this State by a citizen thereof, such suit cannot be removed into the circuit court of the United States, as that court has no jurisdiction of such a case.

31. Whether a repealing act shall have the effect to arrest proceedings in pending cases depends upon the intent of the Legislature.

32. That intent must be gathered from the action of the Legislature itself, but not necessarily from the repealing act alone, but if it can be gathered from any act upon the same subject passed by the Legislature at the same session, that it was the legislative intent, that pending actions or proceedings should be saved, it is sufficient to effect that purpose.

1881
Spring
Special Term.

The B. & O. R.
R. Co.
v
The P. W. &
Ky. R. R. Co,

Writ of error and *supersedeas* to a judgment of the circuit court of the county of Ohio, rendered on the 24th day of April, 1880, in an action in said court then pending, upon writ of error to the judgment of the county court, wherein The Pittsburg, Wheeling & Kentucky Railroad Company was plaintiff, and The Baltimore & Ohio Railroad Company was defendant, allowed on the petition of said defendant.

Hon. Thayer Melvin, judge of the first judicial circuit, rendered the judgment complained of.

JOHNSON, JUDGE, furnishes the following statement of the case :

On the first day of September, 1879, the Pittsburg, Wheeling & Kentucky Railroad Co. served a notice on the Baltimore & Ohio Railroad Co., that it would on the 11th day of September, 1879, make application to the county court of Ohio county for the appointment of commissioners to ascertain a just compensation to it, for taking by petitioner for the construction of the extension of petititioner's road certain parcels of land, &c.

The petitioner on the said 11th day of September, 1879, filed its petition in the said county court alleging,

1881
Spring
Special Term.

The B. & O. R.
R. Co.
v.
The P. W. &
Ky. R. R. Co.

that it was the owner "of a line of railroad, from a point near the eastern end of the railroad bridge opposite Steubenville in the State of Ohio along the eastern bank of the Ohio river through the counties of Brooke and Ohio to and into the city of Wheeling; which line of railroad is now completed and is in operation * * *; that by the terms of its charter granted it by the State of West Virginia petitioner was granted the right of extending its line of railroad from the city of Wheeling in the direction of the Kentucky State line, as will more fully appear by reference to an act of the Legislature of West Virginia passed on the 1st day of March, 1869;"—that petitioner is now constructing and desires to proceed with the construction of its said road as far as the town of Benwood in Marshall county, following along the bank of the Ohio river;—that in following its general course it is necessary to build said line of road over lands belonging to the Baltimore & Ohio Railroad Co., which lands lie within the city of Wheeling."

A plat referred to in the petition and made a part thereof describes the lands sought to be taken. The first parcel of land sought to be taken is in the petition described as follows: " A certain piece or parcel of ground lying on the south side of Wheeling creek and in the city of Wheeling, bounded on the east by a curved line parallel to and twelve and a half feet east of the centre line of the Pittsburg, Wheeling & Kentucky Railroad, as now located and designated by stakes driven in the ground, the said curved line running from a point in a prolongation westwardly of the line of the face of the south abutment of the present Baltimore & Ohio railroad bridge across Wheeling creek, and distant thirteen and one half feet westwardly from the north western corner of said abutment, to a point in the prolongation westwardly of the northern line of Twentieth street in the city of Wheeling, distant thirteen and one half feet westwardly from the northwestern corner of

Twentieth and Water streets; said eastern boundary line being a curve to the right going south with a radius of one thousand nine hundred and twenty-two and one half feet; on the south by the north line of Twentieth street; on the west by the Ohio River; on the north by Wheeling creek;" also referring to the deed conveying said property to the Baltimore and Ohio Railroad Co. The second parcel of land is described as follows: " A strip of land one hundred and thirty-two feet long, and five feet wide, off the east end of two lots lying west of Water street, in the said city of Wheeling, and south of Alley No. 19," also referring to the deed conveying the said lots to the Baltimore & Ohio Railroad Co.

The petition avers, that petitioner intends to use the said parcels of land for the purpose of constructing, maintaining and operating its said railroad, " and that *said parcels of land are necessary for such purposes;*" that petitioner is unable to agree with the Baltimore & Ohio Railroad Co. as to the amount of compensation to be paid for said parcels of land, and said company refuses a right of way over said lands on any terms whatever. Petition prays the appointment of commissioners to ascertain a just compensation for the lands proposed to be taken for the purpose aforesaid; that upon the payment of such compensation the title to said lands might be vested in petitioner, &c.

On the 11th day of September, 1879, the county court entered an order, in which it appears, that the petition was on that day filed, and that defendant, The Baltimore & Ohio Railroad Co. appeared and objected to the said petition and proceedings thereunder for the condemnation of the lands in the petition named, " because the said lands were acquired by the defendant as an incorporated internal improvement company for the use and purposes of its said railroad and branches, and is necessary therefor and for the proper exercise of its franchises, for which it was so incorporated, and as such is not liable to be

1881
Spring
Special Term.

The B. & O. R.
R. Co.
v.
The P. W. &
Ky. R. R. Co.

1881
Spring
Special Term.

The B. & O. R.
R. Co.
v.
The P. W. &
Ky. R. R. Co.

taken for use of the plaintiff; and because said lands are now, and for many years have been, in the actual use of the said defendant in the business of its said railroad for public purposes, and is not liable to be taken for the use and purposes of the plaintiff, &c. Thereupon the defendant The Baltimore & Ohio Railroad Co. filed its petition for the removal of the case into the circuit court of the United States for the district of West Virginia, which petition was sworn to, and was accompanied by a proper bond.

On the 2d day of October, 1879, the court by its order found the security in the said bond to be sufficient, but the plaintiff objected to the removal, and the court overruled the motion to remove the proceeding and refused to permit a removal of the same and thereupon the said Baltimore & Ohio Railroad Co. moved that this proceeding be dismissed.

On the 6th of October, 1879, the court upon consideration overruled the motion to dismiss the proceedings, to which ruling the Baltimore & Ohio Railroad Co., excepted, and thereupon the said company by leave of the court filed a copy of a mortgage-deed upon lands including the premises sought to be condemned, and tendered and offered to file two pleas numbered respectively two, and three, to the filing of which the petitioner objected.

The substance of plea number two is, that the petitioner had no right by means of the proceeding used or otherwise to take or condemn that portion of the land in the petition mentioned as bounded on the north by Wheeling creek and on the south, &c., because the defendant is a corporation organized and doing business under and by virtue of the laws of Maryland, and doing business in the State of West Virginia by its permission, and that its business is operating its railroad, and the said land was at the time of the commencement of the said condemnation proceedings, and still is, held and owned by the defendant for the purpose of being used in its said business and for no other purpose, and that it is not

necessary for the said petitioner, following the general course of its said road, to build its said line of road over the said land, &c.

1881
Spring
Special Term.

The B. & O. R. R. Co.
v.
The P. W. & Ky. R. R. Co.

Plea number three is the same in substance but applies to the other parcel of land sought to be condemned.

On the 11th day of October, 1879, the court sustained the objections made to said two pleas, and refused to permit the filing of the same, to which ruling of the court the Baltimore & Ohio Railroad Co., excepted, and prayed to have said pleas made a part of the record which was done; and the said Baltimore & Ohio Railroad Co., thereupon tendered and offered to file two other special pleas marked numbers four and five, respectively, to the filing of which the petitioner objected, but the court overruled the objection and allowed the said pleas to be filed, to the filing of which the petitioner excepted, and took time to reply.

The said pleas four and five are identical with pleas two and three with the important exception, that there appears in pleas four and five the following, which is not in the rejected pleas two and three, to wit: *"And was at the beginning of the said proceedings, and still is in use by the said defendant in its said business."*

On the 14th day of October, 1879, the petitioner replied generally to each of said pleas four and five, and issue was joined thereon; and the petitioner tendered a special replication to plea number four, to the filing of which the Baltimore & Ohio Railroad Co., objected, which objection the court overruled and allowed the said special replication to be filed, and thereupon the Baltimore & Ohio Railroad Co. excepted, and rejoined to said replication. The court thereupon ordered, that the sheriff be directed to summon a special jury of twenty to be in attendance on the 23d inst. for the trial of the issues joined.

The substance of the said special replication is as follows: "That the said land in said fourth plea mentioned and described is a part of a parcel of land which was

1881
Spring
Special Term.

The B. & O. R.
R. Co.
v.
The P. W. &
Ky. R. R. Co.

conveyed by the city of Wheeling to the said Baltimore & Ohio Railroad Co. in 1852 and has ever since been held by said company by virtue of said conveyance and not otherwise; that from the date of the said conveyance said land described in said plea has not been used by the Baltimore & Ohio Railroad Co. for railroad purposes at any time; that on the 29th day of July, 1879, the council of the city of Wheeling passed an ordinance granting a right of way to the petitioner over the streets and alleys and public grounds of the said city lying south of Wheeling creek according to a route in said ordinance specified, which route passed over the said portion of land sought to be condemned; and said petitioner surveyed and located said route in such manner as to cross the said parcel of ground, and was about to construct its railroad along said route and location, and was about to commence legal proceedings for the taking of said parcel of land, and had theretofore, to wit, on the 15th day of July, 1879, endeavered to purchase from the Baltimore & Ohio Railroad Co. a right of way over said parcel of land; and that afterwards, to wit, on the 20th day of August, 1879, the said Baltimore & Ohio Railroad Co. with full knowledge and notice of the matters aforesaid began erecting a trestle on the said parcel of land, and has since with like notice placed cars thereon, which cars and trestle still stand upon said parcel of ground; and the petitioner avers, that the sole and entire purpose of erecting and maintaining the trestle aforesaid and placing cars thereon was and is to delay, hinder and prevent the petitioner from taking by legal proceedings the said parcel of land, or procuring a right of way over the same, and not because the said trestle was or is necessary for the proper prosecution of the business of the said Baltimore & Ohio Railroad Co.; and that the said trestle was not erected, and with the cars thereon was not, and is not, maintained in good faith, and avers, that the existence and maintenence of said trestle with cars thereon as aforesaid

constitute the use by the Baltimore & Ohio Railroad Co. of said parcel of land at the commencement of these proceedings, and from thence hitherto; and that no other use by said Baltimore & Ohio Railroad Co. has ever been, or is now made of said parcel of land, &c.

1881
Spring
Special Term.

The B. & O. R.
R. Co.
v.
The P. W. &
Ky. R. R. Co.

On the 23d day of October the entry on the record is: "This day came the parties by their attorneys, and came also a jury, (naming them), who were elected tried and sworn the truth to speak upon the issues joined, and having heard part of the evidence in this cause, were by consent of the parties, adjourned &c."

On the 27th day of October, 1879, the jury rendered the following verdict "We the jury find for the petitioner, The Pittsburg, Wheeling & Kentucky Railroad Co., upon the issues joined", A motion for a new trial was made, and, on the 4th day of November, 1879, was overruled, and the court in its order said: "Thereupon it is considered by the court, that the said petitioner has a right in this proceeding to take for its purposes the said several parcels of land in its petition mentioned and described, and to acquire title to said parcels". Upon the motion of the petitioner the court appointed five disinterested persons to view the premises and ascertain a just and equitable compensation for the parcels of land proposed to be taken by the petitioner, as well as for damages to the residue of the tracts, from which the said parcels were to be taken. The said commissioners were duly sworn, and on the 17th day of December, 1879, filed their report. The Baltimore & Ohio Railroad Co. excepted to the said report, and filed five exceptions, in substance as follows:

1st. That since the motion to remove the proceeding to the circuit court of the United States this court has had no jurisdiction thereof.

2d. The land sought to be condemned is, and was when the petition was filed, necessary for the defendant for railroad purposes.

3d. The parcel sought to be condemned lying north of

1881
Spring
Special Term.

The B. & O. R.
R. Co.
v.
The P. W. &
Ky. R. R. Co.

Twentieth street and west of Water street is, and was when the proceeding was begun, in the actual use of the defendant for railroad purposes.

4th. The last mentioned parcel includes within its boundaries a portion of the solid masonry buttress of a railroad bridge of defendant, which bridge has been for more than twenty years maintained in its present position and constantly used by defendant for railroad purposes.

5th. The commissioners were directed by the order appointing them to ascertain and report damages to the residue of the tracts, their oath followed this, and their report finds an aggregate sum for the value of the land taken and the damages. Under the law the commissioners had no jurisdiction, and the court could give them none to assess such damages, though their award in that regard might, if allowed to stand, be conclusive on the defendant.

6th. The report of the commissioners identifies the parcel south of Alley 19 and west of Water street partly by reference to the deed of J. M. Bushfield and wife to defendant. It cannot be determined by the report or by any of the proceedings or papers in the cause taken in connection with the deeds, what are the boundaries of this parcel.

The court overruled the exceptions and each of them; and the Baltimore & Ohio Railroad Co. excepted. The court confirmed the report, and ordered it to be recorded in the law order-book of the court. It is as follows:

" The Pittsburgh, Wheeling & Kentucky Railroad Company v. The Baltimore & Ohio Railroad Company.— Upon an application for condemnation of lands for railroad purposes.

" We, the undersigned commissioners, appointed by the county court of Ohio county by an order made on the application of the Pittsburgh, Wheeling & Kentucky Railroad Co., respectfully report, that having

1881
Spring
Special Term.

The B. & O. R.
R. Co.
v.
The P. W. &
Ky. R. R. Co.

been first duly sworn, we have viewed the real estate owned by the Baltimore & Ohio Railroad Co., mentioned in said application, and are of opinion that the sum of seven hundred dollars will be a just compensation for so much of the first parcel of real estate named in said application, as is proposed to be taken by said applicant— that is to say : A certain piece or parcel of ground lying on the south side of Wheeling creek, and in the city of Wheeling, bounded on the east by a curved line parallel to and twelve and one-half feet east of the centre line of the Pittsburgh, Wheeling & Kentucky Railroad as now located, and designated by stakes driven in the ground, the said curved line running from a point in a prolongation westwardly of the line of the face of the south abutment of the present Baltimore & Ohio Railroad bridge across Wheeling creek, and distant thirteen and one-half feet westwardly from the northwestern corner of said abutment to a point in the prolongation westwardly of the north line of Twentieth street, in the city of Wheeling, distant thirteen and one-half feet westwardly from the northwestern corner of Twentieth and Water streets ; said eastern boundary line being a curve to the right going south, with a radius of one thousand nine hundred and twenty-two and one half feet ; on the south by the north line of Twentieth street ; on the west by the Ohio river ; on the north by Wheeling creek ; the ground of which the above described piece or parcel of ground forms a part was conveyed to the Baltimore & Ohio Railroad Co. from the city of Wheeling by deed dated December 8, A. D. 1852, and recorded in the clerk's office of the county court of Ohio county, West Virginia, in deed book numbered 37, on page 379, as well as for damages to the residue of said real estate. And we are further of opinion that the sum of three hundred and sixteen dollars will be a just compensation for so much of the second parcel of the real estate mentioned in said application as is proposed to be taken by said applicant—that is to say : A strip of land one hun-

1881
Spring
Special Term.
The B. & O. R.
R. Co.
v.
The P. W. &
Ky. R. R. Co.

dred and thirty-two feet long and five (5) feet wide off of the east end of two lots lying west of Water street in the said city of Wheeling, and south of Alley No. 19, produced, this strip of land is the east five feet of two lots of land which were conveyed to said Baltimore & Ohio Railroad Co. by J. M. Bushfield, by deed dated the 23d day of October, A. D. 1854, and recorded in the clerk's office of the county court of Ohio county, West Virginia, in deed book numbered 40, page 308, as well as for damages to the residue of said real estate.

"Given under our hands this 10th day of December, A. D. 1879."

This report is signed by all the commissioners.

The court further gave judgment in favor of the Baltimore & Ohio Railroad Co., against the petitioner for the several sums of $700.00 and $316.00, as found, as appears by the report, together with costs.

The order further proceeds: "It being agreed by the parties by their attorneys, that said petitioner has tendered to said Baltimore & Ohio Railroad Co., said sums of seven hundred dollars ($700.00) and three hundred and sixteen dollars ($316.00) and its costs as aforesaid, and that said sums were refused by said Baltimore & Ohio Railroad Co., it is considered, that said Pittsburg, Wheeling and Kentucky Railroad Co., do pay into conrt said sums of money and the costs of this proceeding now taxed by the clerk at $178.85, aggregating $1.194.85 and such sum of $1.194.85 is now accordingly paid into court by said petitioner; it is therefore considered by the court, that said petitioner has title to the two several parcels of land mentioned in the said report of the commissioner, as to be taken by the petitioner, and that title to said respective parcels is now vested in said petitioner."

During the trial, the Baltimore & Ohio Railroad Co. obtained three several bills of exceptions to the rulings of the court.

The *first* to the overruling of a challenge to the juror,

John Moffatt. This juror was challenged, because "said juror was a citizen of Ohio county and paid county-taxes as such citizen", which was admitted by petitioners counsel to be true, but who nevertheless resisted the challenge.

1881
Spring
Special Term.

The B. & O. R.
R. Co.
v.
The P. W. &
Ky. R. R. Co.

The *second* bill of exceptions was to the ruling of the court denying the motion of the Baltimore & Ohio Railroad Co. to first introduce its evidence on the issues joined, and to open and conclude the argument to the jury.

The *third* bill of exceptions certifies all the evidence introduced upon the trial of the issues, and is to the ruling of the court in refusing to give instructions numbers one and three and in refusing to set aside the verdict, and grant a new trial. So much of the evidence as is necessary to the proper decision of the case will be referred to in the opinion of the court. The two instructions asked and refused are as follows:

" The jury are instructed to find for the Baltimore & Ohio Railroad Co. the issue formed on the fifth plea with reference to the strip of land on Water street and south of Alley 19, if they believe that it was at the time, of the beginning of this condemnation proceeding and still is, used by the Baltimore & Ohio Railroad Co. for the purposes of its business without reference to the reason, which may have actuated the said company in putting it to such use."

" If the jury believe from the evidence, that any part of the land lying west of Water and north of Twentieth street, and sought to be condemned by the Pittsburg, Wheeling & Kentucky Railroad Co. was at the time of the commencement of this condemnation proceeding in the *bona fide* use of the Baltimore & Ohio Railroad Co. for the purposes of its legitimate business, they should find for the said Baltimore & Ohio Railroad Co. as to the whole of the portion thereof so proposed to be condemned, notwithstanding that any other portion of the same parcel may not have been in use as aforesaid;

and therefore if the jury believe the land so proposed to be condemned includes a portion of the buttress of the bridge of the Baltimore & Ohio Railroad Co. erected by it across Wheeling creek, and if they believe that the said bridge and buttress were erected and are mantained and used by the said Baltimore & Ohio Railroad Co. *bona fide* for the purposes of its legitimate business, then the jury shall find for the Baltimore & Ohio Railroad Co. the issue as to the whole of the land lying west of Water and north of Twentieth street, and so sought to be condemned."

The Baltimore & Ohio Railroad Co. applied to the circuit court of Ohio county for a writ of error and *supersedeas* to the judgment of the county court, which were granted; and upon a hearing thereof on the 24th day of April, 1880, the judgment of the county court was affirmed. To the judgment of the circuit court affirming the judgment of the county court, upon petition, this court granted a writ of error and *supersedeas*.

*Henry M. Russell,* for plaintiff in error cited the following authorities:

Act of Congress March 3, 1875; Acts 1872–3, ch. 88, § 18; 1 Otto 367; 2 Pet. 464; 8 Otto 403; 3 Dillon C. C. 465; 6 W. Va. 397; 12 Wall. 82; 2 How. 497; 1 Black 286; Code, ch. 34, §15; 8 Wall. 168; 12 Gratt. 659; 13 Wall. 270; 29 Gratt. 431; 32 Gratt. 394; *Id.* 445; 28 Gratt. 268; 1 W. Va. 308; 3 W. Va. 327; 15 W. Va. 609; 20 Wall. 445; 4 Otto 535; 32 Ohio St. 468; 27 Ohio St. 155; 3 Dillon C. C. 350; 33 Ohio St. 278; Const. Art. III, § 9; 68 N. Y. 167; 124 Mass. 368; 43 Conn. 234; 4 Cush. 72; Code, ch. 29, § 67; 66 N. Y. 413; 53 N. Y. 574; 118 Mass. 391; 32 Wis. 569; Mills Em. Dom. § 49 *et seq.*; *Id.* § 115.

*Daniel Lamb,* for plaintiff in error cited the following authorities:

18 Pick. 501; 47 Ill. 467; 19 Ohio St. 560; Acts

1881
Spring
Special Term.

The B. & O. R.
R. Co.
v.
The P. W. &
Ky. R. R. Co.

1872–3, ch. 88, § 18; 7 Rob. Pr. 23–25; 1 Bish. Crim. L. (3d ed.), § 189; 41 Conn. 305, 307 ; 15 Johns. 537 ; 15 Ill. 386; 14 Mass. 222; 3 Ad. & El. 433; 102 Eng. C. L. 559; 108 Eng. C. L. 180; 1 Dutch. 411 ; 4 Zab. 666; 36 N. J. L. 500; 27 Vt. 500; 29 Mo. 141; 15 Hun. 80; 4 Ohio St. 685; 23 Wall. 109 ; Redf. Railways ch. 11, §7, ¶ 17; Const. Art. III, §10 ; 35 N. Y. 306; 20 Gratt. 108 ; 72 Pa. 82; 16 Minn. 376; Law Rep. 2 C. P. 401 ; 4 Mass. 627 ; 23 Gratt. 418; 3 Otto 274 ; 11 Wall. 259; 6 Wall. 239 ; 14 How. 340 ; 9 How. 350 ; 4 Conn. 384 ; Broom Max. (6th Am. ed.) 88 *et seq.*; Mills Em. Dom. § 94 ; Wade Notice § 1127 ; Pierce Am. Railroad Law pp. 213, 214 ; Redf. Railways ch. 11 § 10, ¶ 2; 2 Dana 227 ; 5 Ohio St. 150; 70 N. Y. 227 ; 15 Wend. 374 ; 18 N. Y. 200; 21 Ind. 321; 42 Ia. 173 ; Mills Em. Dom. § 98; 19 Ohio St. 173; 13 Miss. 17; 36 N. J. Law. 181 ; 67 Me. 358 ; 78 Ill. 96 ; 38 Ia. 463; Mills Em. Dom. §§ 95, 103 and cases cited ; 4 Otto 712 ; 23 Wall. 458; 58 N. Y. 143; 4 Pet. 475; 7 Rob. Pr. 42–44; 3 Otto 274; 6 W. Va. 397 ; 24 Wis. 89; 67 Pa. 479; 34 Ala. 311; 66 N. Y. 569; 47 Ill. 463; 5 W. Va. 382; 7 W. Va. 191; 15 Ohio St. 21; 72 N. Y. 245; 75 N. Y. 335; 67 N. Y. 371; 1 Zab. 189 ; 5 W. Va. 382; 25 Pa. 445; 51 Mo. 200; 44 Mo. 540; 82 Pa. 382; 19 Ohio St. 560; 43 N. Y. 137; 9 Rich. Law (old series) 228; 8 Bush 69; 39 N. J. Law 28; 20 Hun. 201; 23 Cal. 324; 43 Conn. 234; 70 N. Y. 191 ; 29 Pa. 165; 82 Pa. 382; 87 Ill. 317; 4 Ohio St. 675 : 1 Otto 367; 36 N. J. Law 181; 16 Hun. 497 ; 78 N. Y. 362; 5 Ohio St. 276 ; 5 W. Va. 382; 6 W. Va. 397; 7 W. Va. 191; 9 W. Va. 648; 47 N. H. 151; 87 Ill. 317; 32 Ohio St. 218; 26 Gratt. 661; 11 Wend. 149; 1 Harp. Chy. Rep. 189; 10 Ohio 288; 2 Dillon Mun. Corp. §§457, 458 ; Cooley Con. Lim. 539–541 ; 29 Pa. 165 ; 114 Mass. 368; 118 Mass. 391 ; 53 N. Y. 574 ; 68 N. Y. 167 ; 8 Otto 406 ; 9 Wheat. 738 ; *Id.* 828 ; *Id.* 850; 6 Bissell 425; 5 Otto 183; 65 N. Y. 195 ; 46 N. Y. 1; 2 Metc. (Ky.) 240 ; 34 Ill. 356; 50 Ind. 60 ; 116 Mass. 275 ;

1881
Spring
Special Term.

The B. & O. R.
R. Co.
v.
The P. W. &
Ky. R. R. Co.

Dillon Rem. Caus. (2d ed.) 63, 75 ; 33 Ohio St. 278 ; 18 U. S. Stat. at large 470; 16 Pet. 97 ; 15 How. 107 ; 6 Otto 202 ; 7 Otto 648 ; 22 Wall. 322 ; 95 U. S. 401 ; 4 Otto 445 ; 20 How. 227 ; 1 Black 295 ; 8 Wall. 177 ; 10 Wall. 410 ; 5 Cranch 86 ; 18 How. 405 ; 2 How. 497 ; 16 How. 325 *et seq.* ; 51 Pa. 228 ; 7 Wall. 121 ; 8 Wall. 343 ; 11 Wall. 210 ; 12 Wall. 81 ; 13 Wall. 270 ; 20 Wall. 453 ; 32 Gratt. 447 ; 5 W. Va. 81 ; 28 Ohio St. 208 ; 32 Ohio St. 468 ; 105 Mass. 141 ; 41 N. Y. 150 ; 67 N. Y. 544 ; 1 W. Va. 308 ; 3 W. Va. 319 ; 12 Gratt. 655 ; 15 W. Va. 609 ; 12 Wall. 65 ; 6 Otto 375 ; 14 How. 23.

*W. P. Hubbard, R. G. Barr and W. H. Hearne* for defendant in error cited the following authorities :

Acts 1875, ch. 114, § 21 ; Dillon Mun. Corp. § 482 ; 3 Paige 75 ; Mill's Em. Dom. § 94 ; 6 W. Va. 397 ; 11 Leigh 42 ; 3 Gratt. 258 ; 6 Bissel 425 ; 3 Dillon 465 ; 8 Otto 406 ; 12 Gratt. 655 ; 1 W. Va. 308 ; 3 W. Va. 319 ; 18 Md. 192 ; 51 Pa. St. 228 ; 12 Wall. 70 ; 29 Gratt. 431 ; 32 Gratt. 394 ; 15 How. 207 ; 16 Pet. 103 ; 22 Wall. 322 ; 46 N. Y. 1 ; 50 Ind. 60 ; 2 Metc. (Ky.) 240 ; 34 Ill. 356 ; 116 Mass. 275 ; 65 N. Y. 195 ; 9 W. Va. 648 ; Mills Em. Dom. §§ 45, 47 ; 25 Am. 545 ; 31 N. J. 217 ; 35 Mo. 224 ; 6 How. (West River Bridge case) ; 11 Leigh 42 ; 3 Gratt. 258 ; 2 Hill 443 ; 4 Bush 448 ; 66 Ill. 174 ; Acts 1872–3, ch. 114, § 63 ; Mills Em. Dom. § 92 ; 1 Munf. 162 ; 11 Gratt. 78 ; 6 Pet. 205 ; Mills Em. Dom. §§ 11, 62, 84 ; 1 Otto 367 ; Dillon Mun. Corp. §§ 482, 483 ; 3 Paige 75 ; 6 W. Va. 397 ; 124 Mass. 368 ; 43 Conn. 234 ; 118 Mass. 391 ; 4 Cush. 63 ; 2 Hill 443 ; 11 Leigh 42 ; 3 Gratt. 258 ; Mills Em. Dom. 60, 61 ; 1 Otto 373 ; 23 Mich. 471 ; 6 W. Va. 336 ; 15 W. Va. 392 ; *Id.* 624 ; Comyn Dig. " Franchises," F. 6 ; 2 Kent Com. 276 ; 10 B. & Cres. 349 ; 12 Gratt. 655 ; 3 W. Va. 319 ; 1 Black 286 ; 2 How. 497 ; 13 Wall. 283 ; 51 Pa. St. 228 ; 29 Gratt. 431 ; 32 Gratt. 394 ; 16 Pet. 97 ; 5 Otto 183 ; 46 N. Y. 1 ; 50 Ind. 60 ; 2 Metc.

(Ky.) 241; 34 Ill. 356; 65 N. Y. 195; 9 Leigh 313; 1 Ia. 393; 2 Zab. 495; 9 Ia. 594; Cooley Cons. Lim. (3d ed.) 568, note 1; Mills Em. Dom. 159, 168; 21 Gratt. 178; 66 Ill. 174; 19 Ohio St. 299; 17 Conn. 40; 23 Ohio St. 510; 13 How. 71; 35 Mich. 265; Mills Em. Dom. §§ 41; 11 Leigh 79; 3 Gratt. 258; 31 N. J. 217; 35 Md. 224; 6 How. 507; 124 Mass. 368; 4 Bush. 448; Acts 1872–3, ch. 114, § 63; Mills Em. Dom. § 92; 117 Mass. 302; 17 Minn. 188; 3 Oregon 311; 1 Greenl. Ev. § 74; 9 W. Va. 616; Proffat Jury Trials § 213; 2 Stark. 31; 3 Chitt. Gen. Pr. 872, 877; Swift Ev. 152; Ball N. P. 298; Ry. & M. 254; 11 Pick. 125; 7 Wis. 1; 28 N. Y. 324; 26 Ia. 205; 11 Jur. 398; 5 Exch. 734; 15 M. & W. 589; 5 Q. B. 447; 1 Munf. 162; 10 Humph. 340; 4 How. (Miss.) 13; 2 W. Va. 591; 4 Min. Inst. pt. 1, p. 756; Mills Em. Dom. § 220.

1881
Spring
Special Term.

The B. & O. R.
R. Co.
v.
The P. W. &
Ky. R. R. Co.

JOHNSON, JUDGE, announced the opinion of the Court:

This is a proceeding instituted in the county court of Ohio county for the condemnation of certain land belonging to the Baltimore & Ohio Railroad Co. for the use of the petitioner in constructing an extension of its railroad. It is a proceeding under chapter 88 of the Acts of 1872-3, of which proceeding the county court alone had original jurisdiction. *Chesapeake & O. R. R. Co.* v *Hoard*, 16 *W. Va.*

Section 18 of said chapter 88, among other things provides, that "the court of any county, wherein the land or material to be taken may be, upon application therefor shall appoint five disinterested persons, (any three of whom may act) for the purpose of viewing and ascertaining a just and equitable compensation for the quantity of land actually taken by said railroad corporation * * *, and the sheriff of the county, after such appointment is made, shall summon the said viewers to meet on the land, at such time as they may appoint, within thirty days after such appointment, giving twenty days notice to the part-

1881
Spring
Special Term.

The B. & O. R.
R. Co.

The P. W. &
Ky. R. R. Co.

v.

ies interested, unless such parties are non-residents of this State, in which case notice shall be given to such non-residents by publication for four successive weeks in some newspaper &c". Neither this section nor any other section of the chapter requires notice to be given to the parties interested of the application to the court to appropriate the land for railroad purposes.

It is therefore here insisted by petitioner's counsel, that the notice, which was in this case given of such application, was unnecessary, and that therefore the resistance by pleas and otherwise by the defendant to the order of the court, declaring the land should be condemned for the use of the petitioner, was unauthorized by law and should be wholly disregarded by this court, that the defendant had no right to appear in this proceeding to contest the condemnation of the land; that such condemnation of the land for the purposes of petitioner was an *ex-parte* proceeding, and that defendant had no right to appear in the proceedings except on the question of compensation.

A long and critical examination of very many adjudicated cases discloses the fact, that the statutes of the different states upon the subject of taking private property for public use are very obscure, and that ours is not among the most lucid of them. The statutes of the several states generally do not lay down any specific rules of proceeding except as to the manner of ascertaining the compensation to be paid; and the courts have therefore not been uniform in their mode of procedure in such cases. But there are general rules applicable to the rights of the citizen, which must not be disregarded in condemnation proceedings any more than in others. The law protects with jealous care the rights of the citizen, and while he must yield to the public necessity, and surrender his private property to public use upon just compensation being paid or secured to him, yet in compelling him to do this the courts will see to it, that the

rights guaranteed to him by the Constitution will receive full protection.

1881
Spring
Special Term.

The court in condemnation cases has jurisdiction of the subject matter and parties; and its judgment, unless reversed in some appellate proceeding, is therefore conclusive upon the parties. From the statute itself it appears, that this would be the effect of a judgment in favor of the applicant for condemnation. The judgment in its result is to operate as a transfer of the title of the owner of the land without his consent to the applicant upon payment of the ascertained compensation, and is as conclusive between the parties as a conveyance would be. Independent of statutory proceedings the rule seems to be fully established, that a judgment of a court of competent jurisdiction in condemnation-proceedings is as conclusive upon the parties thereto, as any other judgment. *Butman* v. *Vermont R. R. Co.*, 27 Vt. 500; *Evans* v. *Haefner*, 29 Mo. 141; *Allen* v. *Utica R. R. Co.*, 15 Hun. 80; *Houston* v. *Eaton & Hamilton R. R. Co.*, 4 Ohio St. 685; *Secombe* v. *R. R. Co.*, 23 Wall 109.

The B. & O. R.
R. Co.
v.
The P. W. &
Ky. R. R. Co.

Syllabus 1.

Syllabus 2.

*Butman* v. *Vt. R. R. Co.* was a special action on the case to recover damages beyond what had been awarded to the plaintiff by the commissioners for an injury, which it was claimed was done to him by reason of the construction of the defendant's railway across his premises. The plaintiff recovered in the court below, but the Supreme Court reversed the judgment and held, that the decision and award of commissioners appointed to assess the damages sustained by an owner of land from the location of a railroad is a judicial act, and unless appealed from becomes *res adjudicata* and cannot be collaterally impeached; and further, that after an appraisal by such commissioners, which is not appealed from or otherwise vacated, an action at law can not be maintained to recover damages, which were not appraised and awarded in consequence of the false representations by the agents of the railroad company in regard to the manner in which the railroad was to be constructed.

In *Allen* v. *Utica, &c., R. R. Co.* the action was brought to recover the possession of certain land, which the defendant claimed to have been taken under certain proceedings had under the general railroad act. The plaintiff insisted, that no title was obtained by the proceedings, for the reason that the map of the location of the road, filed in the clerk's office, did not embrace the lands described in the petition and now in dispute. The petition alleged, that the land had been surveyed, the map filed, the road located, and that the land in dispute was required for the purposes of constructing and operating the road. It was held by the Supreme Court, that as the plaintiff might have then contested any of these allegations, but had failed to do so, she was concluded by the orders made in the proceedings, and could not now attack them collaterally.

In *Houston* v. *Eaton & Hamilton R. R. Co.* it was held, that the owner of land, regularly appropriated to the use of a railroad company upon proceedings instituted by the company under laws providing therefor, is barred of the common law remedy to sue for and recover the damages he may have sustained by the entry of the company and the construction of its road upon such land. And in such case the bar is equally effectual, although the owner may have refused to submit to such proceedings, or to receive the amount accorded to him and deposited for his use.

In *Secombe* v. *Railroad Co.* the action was ejectment to recover a lot in Minneapolis used by the company for a station. The railroad company was in possession of the lot, claiming it under an act of condemnation made in 1867 in favor of the Minnesota Central Railway Co. in the alleged exercise of the right of eminent domain. Against the right of the railroad company Secombe alleged, 1st. That under the constitution and laws of Minnesota the company was not a corporation, and therefore under the said laws not authorized to procure a condemnation in any form ; 2d. That whether it was

a corporation or not, all of the proceedings taken to obtain title to the lot were under the said constitution and laws void. The court below gave judgment for defendant, which was affirmed by the Supreme Court.

Mr. Justice Davis, who delivered the opinion of the court, said : " It is urged also against the validity of the award of the commissioners, that it was not made in reasonable time, or the amount of it ever paid or tendered to the parties in interest. Whether this be so or not does not concern the plaintiff. It is enough for him to know, that a judgment was entered confirming the award, and the money paid into the court for the use of Prinney and Osborne, his grantors, and is there now, unless they have seen fit to withdraw it. It is a fair presumption, as both these persons had notice, actual or constructive, of the proceedings in condemnation, and took no steps to review them, that they were either satisfied with the award, or concluded they could not make successful opposition to it. This suit is an effort to question the propriety of the condemnation and sale of the property in a collateral proceeding, not by a party even whose land was appropriated, but by a stranger to the original proceeding, who, whatever his motive in buying, got no other estate than the original owner could convey—a fee subject to the easement of the railroad company. The judgment of condemnation in this case was rendered by a competent court, charged with a special statutory jurisdiction ; and all the facts necessary to the exercise of this jurisdiction are shown to exist. A judgment thus obtained is no more subject to impeachment in a collateral proceeding, than a judgment of any other court of exclusive jurisdiction. If it were so, railroad companies would have no assurance, that the steps taken by them to procure the right of way would conclude any one, and they would constantly be subject to vexatious litigation."

The owner of land is entitled therefore to notice of the application to be made to the court to appropriate

1881
Spring
Special Term.

The B. & O. R.
R. Co.
v.
The P. W. &
Ky. R. R. Co.

Syllabus 3.

1881
Spring
Special Term.

The B. & O. R.
R. Co.

The P. W. &
Ky. R. R. Co.

his land to public use, before judgment appropriating it can be entered. But at whatever stage of the proceeding the owner of land is summoned to appear, after such notice he has the right to contest the appropriation of his land to the petitioners use  Would not a statute, which by a mere *ex parte* proceeding authorizes a railroad company to take land without the consent of the owner, be unconstitutional ? (*Rutherford's Case*, 72 Pa. 82; *Bostwick* v. *Isbell*, 41Conn. 307 ; *Rockwell* v. *Nearing*, 35 N. Y. 306; 20 Gratt. 108 ; *Langford* v. *Commissioners* 16 Minn. 376,)

In *Rockwell* v. *Nearing* it was held, that the Legislature transcends the limits of its authority, when it enacts, that one citizen may take, hold, and sell the property of another without notice to the owner, or without process or warrant, as a mere penalty for a private trespass.

In *Rutherford's Case* the act in question provided for an *ex parte* appointment of commissioners to view and determine, whether the land could be re-drained and report what drains should be made, their dimensions, &c.; the act required no notice to the land-owner as to appointment of commissioners or their report, on the filing of which the owner is to be ordered to open the drains within a given time under a daily penalty.   It was held, that this was not due process of law and was contrary to the bill of rights.   It was further held, that in cases where a law omits to require notice, and it might be supplied by actual notice, such notice must be a judicial notice.

In *Langford* v. *Commissioners, &c.*, it was held, that an act of the Legislature, which authorizes the taking of private property for the purposes of a State-road, appointing three commissioners, private citizens, without the consent of the persons whose lands are taken, and authorizing them, or a majority of them, to determine the compensation due to the land-owners, but requiring no notice of the proceedings before the commissioners,

1881
Spring
Special Term.

The B. & O. R.
R. Co.
v.
The P. W. &
Ky. R. R. Co.

nor making any provision, that the land-owners may appear at any stage of the proceedings for any purpose, does not provide a just or equitable mode of determining the compensation due to a citizen for property taken for public use, and is unconstitutional and void.

In *Cooper* v. *Board of Works, &c.,* 108 Com. Law 180, it was held by Willis, J., " That a tribunal, which is by law invested with power to affect the property of one of Her Majesty's subjects, is bound to give such subject an opportunity of being heard, before it proceeds; and that that rule is of universal application, and founded upon the plainest principles of justice."

It has been frequently held, that it is an essential principle of natural justice, that every man have an opportunity to be heard in a court of law upon every question involving his rights or interests, before he is affected by any judicial decision of the question. *Commonwealth* v. *Inhabitants of Cambridge,* 4 Mass. 627; *Underwood* v. *McVeigh,* 23 Gratt. 418; *Underwood* v. *McVeigh,* 3 Otto 274; *McVeigh* v. *United States,* 11 Wall. 259; *Harris* v. *Hardeman et al.,* 14 How. 340; *Aldrich,* v *Kinney,* 4 Conn. 384.

It is true, that the statute has omitted to provide, that notice of the application for condemnation shall be given to the land-owner, before the viewers are appointed to ascertain a just compensation for the land, but does it follow, that the owner is not entitled to such notice, and is not allowed to appear and show, if he can, that the applicant has no lawful right to take the land from him ? This is not the construction to be given such a statute. Where a statute authorizes a legal proceeding against Syllabus any one, and does not expressly provide for notice to be given, it is implied that an opportunity shall be afforded him to appear in defence of his rights, unless the contrary clearly appears. *Bostwick* v. *Isbell,* 41 Conn. 305; *Commissioner of Highways* v. *Clan,* 15 Johns. 537; *Eddy* v. *The People,* 15 Ill. 386; *Chase* v. *Hathaway,* 14 Mass. 222; *Cooper* v. *Board of Works,* 108 Com. L. 181;

1881
Spring
Special Term.

The B. & O. R.
R. Co.
v.
The P. W. &
Ky. R. R. Co.

*State* v. *Newark*, 1 Dutch. 411; *State* v. *Jersey City*, 4 Zab. 666; *State* v. *Trenton*, 36 N. J. Law 500.

It is insisted by counsel for defendant in error that notice to the land-owner is not requisite to the validity of the *taking* of the land, however it may be with regard to the assessment of damages; and they refer to Mills on Em. Dom. to sustain the proposition. Is Mr. Mills sustained by the authority he cites? He refers to *Harper* v. *Lexington R. R. Co.*, 2 Dana 227; *Brown* v. *Cleveland & Pittsburgh R. R. Co.*, 5 Ohio St. 140.

In *Harper* v. *Lexington R. R. Co.*, Underwood, J. said: "We do not perceive the necessity for giving the owner of land personal notice of the time and place of the meeting of the jury, as contended for by the counsel for Harper. The law has not required such notice; and therefore we are not disposed to regard it as indispensable, although there is much propriety in giving it. There may be cases where it could not be given except by advertisement against persons unknown. In this case however we suppose from an endorsement on the warrant of " executed," and all the subsequent proceedings, that Harper had notice. The jury are to make the assessment on their own view, and hence there is not the same necessity for notice, as if they had to decide on evidence furnished by the parties." The statute is not cited in the opinion of the court, neither does it appear whether Harper was a non-resident.

*Wilson* v. *Hathaway*, 42 Ia. 173; and *Copp* v. *Commissioners, &c.*, 19 Ohio St, 173, decide, that where the act provides for the publication of notice, that is sufficient.

In *Steward* v. *Board of Police, &c.*, 25 Miss. 479, it appeared, that in condeming land to be used as a public road no provision was made by statute in relation to notice to those interested. The court held, that "as a general rule it is true, that no party is concluded by the judgment of any court, unless he has notice of the suit, by which his rights are to be affected. In this State

in almost every instance constructive notice may be sufficient. The proceedings of boards of police in this State condemning lands to be used as public highways are strictly proceedings *in rem*. In such proceedings constructive notice is sufficient to the parties interested." To the same effect is *Railroad Co.* v. *Hemphill*, 35 Miss. 17.

In neither of the foregoing cases are any authorities cited.

In *Georges Creek Coal & Iron Co.* v. *New Central Coal Co.*, 40 Md. 437, the court by Miller, Judge, says : " It is next objected, that the appellant had no notice of the application for a new requisition, and no opportunity to be heard against the petition and motion for it, and it is contended, that without such notice the order directing it was passed without lawful authority. Here again the statute furnishes a complete answer to the objection. It does not require any notice to be given to the landowner either of the original application to the magistrate, or of that to the court for a new inquisition when the first has been set aside. However important notice in such cases may be, it is sufficient for the question we are now considering, that the law-makers have not made it a prerequisite to the validity of the proceedings. It is probable the Legislature thought, the construction of such works of public interest ought not to be delayed by the necessity of giving notice to parties not *sui juris*, and non-residents of the county where the lands to be condemned were situated, and that the requirement of a previous attempt to purchase from resident owners *sui juris* and failure to agree was sufficient notice to them, that the company would proceed to have their lands condemned. But we need not speculate, what was the motive of the Legislature in omitting the requirement of notice in such cases; they have passed a law, which confers jurisdiction upon courts to pass orders like this without notice."

Here again no authority whatever is cited; and I

1881
Spring
Special Term.

The B. & O. R.
R. Co.
v.
The P. W. &
Ky. R. R. Co.

1881
Spring
Special Term.

The B. & O. R.
R. Co.

v.

The P. W. &
Ky. R. R. Co.

have given the whole reasoning of the court to sustain the position it assumed. This case is against the current of decisions.

In *City of Boonville* v. *Ormrod's adm'r*, 26 Mo. 195, Scott, Judge, in delivering the opinion of the court said: " The constitution may not require notice to be given of the taking of private property for public use, yet when the Legislature prescribes a mode, by which private property may be taken for such purpose, we will out of respect to it suppose, that it did not contemplate a violation of that great rule, recognized and enforced in all civil governments, that no one shall be injuriously affected in his rights by a judgment or decree resulting from a proceeding, of which he had no notice, and against which he could make no defence. Nothing would so much impair that just self respect arising from the ownership of property fairly acquired as the reflection, that it is subject to be defeated by others without notice to the person. The times require, that courts should be zealous in carrying out that great aim of government—the defence of men and their children in the enjoyment of property acquired by their dilligence, toil and labor. No man can cherish a warm affection for a government, that suffers others without notice and behind his back to seize and appropriate his property on occasions justified by no emergency."

In *Owner of Ground, &c.* v. *Mayor, &c.*, 15 Wend. 374, it was held, that private property could not be taken for public use without notice of the proceeding to the owner, but that it was competent to the Legislature to direct the mode of giving such notice, and if the requirements of the statute in such cases should be complied with, it would be sufficient.

The case of *Corliss* v. *Corliss*, 8 Vt. 373 was one in a probate court ; and it was remarked, that notice is so essentially necessary, that without it such proceedings are uniformly held void, except in cases where the statute has provided a specific means of relief. So far has this

1881
Spring
Special Term.

The B. & O. R.
R. Co.
v.
The P. W. &
Ky. R R. Co.

principle been carried, that such proceedings have frequently been adjudged void for want of notice, even where none was directed by statute.

The fourth section of the act amendatory of the charter of the city of Boonville (Leg. Acts 1847 p. 183) directs, that "if the parties cannot agree upon a compensation, the mayor shall cause the same to be ascertained by a jury, &c."

In the case of *Hinckley et al.*, 15 Pick. 448 a similar provision in a statute providing for an agreement of the parties was held clearly to indicate, that the Legislature contemplated a notice to the party whose property was to be taken for public use.

In *Hood* v. *Finch*, 8 Wis. 381, it appeared, that the charter of the city, which had condemned land for a street, enabled the city council " to take private property for public use without any notice to the individual whose property was to be taken," Cole, J. said : " We cannot dismiss this case without adding, what in substance was said in the case of *Lumsden* v. *The City of Milwaukie*, 8 Wis. 485, that provisions of this character in city charters confound all our ideas of fairness and equity, and are clear departures from those principles of the constitution and of common justice which are the security for the rights of property."

In legal proceedings, where actual service cannot be had on the defendant, constructive service, if authorized by statute, will be regarded as "due process of law." *Owners of Grounds* v. *Mayor of Albany,* 15 Wend. 374; *Empire City Bank Case*, 18 N. Y. 200; *Board* v. *Board*, 24 Ind. 321; *Wilson* v. *Hathaway*, 42 Ia. 173 ; *The Village of Gloversville* v. *Howell et al.*, 70 N. Y. 287.

That notice is not required in such proceedings is also denied. *Wilson* v. *European, &c. R. Co.*, 67 Me. 358; *Chicago & Alton R. Co.* v. *Smith*, 78 Ill. 96; *Levison* v. *Cole et al.*, 38 Ia. 463.

In *Bostwick* v. *Isbell*, 41 Conn. 305, it appears, that the act of 1867 of the Legislature of the State provided,

1881
Spring
Special Term.

The B. & O. R.
R. Co.

v.
The P. W. &
Ky. R. R. Co.

that any judge of the Supreme Court upon the application of either partner upon the dissolution of a co-partnership may forthwith appoint a receiver to take possession of, hold and dispose of all the estate of the co-partnership, in case such judge shall deem the same just and reasonable. The court held, that the law was to be construed as impliedly requiring reasonable notice to be given to the adverse party before the appointment of the receiver; and that it was necessary before making such an appointment, that the judge should make an express finding, that it was just and reasonable, that a receiver should be appointed; and further, that the powers given by the act to the receiver are so great, that if the act is to be construed as intending to authorize the appointment without notice, it should be held to be void, as contrary to the principles of natural justice.

But suppose it is true, that the proceding to condemn private property for public use is a proceeding *in rem*, then it would be neccessary, in order to give the court jurisdiction, *that the property* should be *actually seized by an officer of the court*. *Pike* v *Wassell* 4 *Otto* 712; *The Rio Grande*, 23 Wall. 458; *Cooper* v *Reynolds* 10 Wall 317.

In *Taylor* v *Carryl*, 20 How 599, the rule is thus laid down: "In admiralty all parties, who have an interest in the subject of the suit, the *res*, may appear, and each may propound independently his interest. The seizure of the *res and* the publication of the monition or invitation to appear is regarded as equivalent to the particular service of process in law and equity. But the *res* is in no other sense than this the representative of the whole world. But it follows, that to give jurisdiction *in rem*, there must have been a valid seizure and an actual control of the ship by the marshal of the court." See also *Tracy* v *Corse* 50 N.Y. 143; *Hollingsworth* v *Barboar et al.*, 4 Pet. 475. It is essential to the validity of a proceeding *in rem*, that some notification beyond that arising from the seizure of the property should be given by monition,

public proclamation, or publication in some other form to the parties interested, to enter their appearance in the proceedings and defend their rights in the property, and if they do appear, they must be heard in their defence. *Windsor* v *McVeigh* 3 Otto 274; *Tracy* v *Corse* 58. N. Y. 144; *Underwood* v *McVeigh* Otto; *Taylor* v *Corryl* 20 How. 599.

1881
Spring
Special Term.

The B. & O. R.
R. Co.
v.
The P. W. &
Ky. R. R. Co.

It is here contended by counsel for defendant in error, that the *taking* of land is not a judicial proceeding, and that therefore the land-owner was not entitled to notice; and that from the judgment of condemnation there could be no *supersedeas*. The right of eminent domain appertains to every independent government. It requires no constitutional recognition; it is an attribute of sovreignty. The clause found in the constitutions of the several States, providing for a just compensation for property taken, is a mere limitation on the exercise of the right. When the use, for which private property is appropriat- Syllabus 6. ed, is public, and the Legislature has acted upon the question, the expediency or necessity of appropriating any particular property is not a subject of judicial cognizance. The property may be appropriated by an act of the Legislature; or the power of appropriating it may be delegated to private corporations, to be exercised by them in the execution of works, in which the pub- Syllabus 7. lic is interested. But when the sovereign power attaches conditions to the exercise of the right of eminent domain, the enquiry, whether the conditions have been observed, is a matter for judicial cognizance. *Boom Co.* v *Patterson* 8 Otto 403.

In *Milwaukie and St. Paul Railway Co.* v. *City of Faribault*, 23 Minn. 167, Cornell, Judge, in delivering the opinion of the court said: " It is claimed by the defendant, that the city council in this case was the sole and exclusive judge as to the public necessity and propriety of laying out the proposed street, on the ground that the necessity and expediency of laying out highways is exclusively a legislative and not a judicial question.

1881
Spring
Special Term.
The B. & O. R.
R. Co.
v.
The P. W. &
Ky. R. R. Co.
This is undoubtedly correct as a rule applied to the Legislature itself, and also to a municipal body acting within the conceded limits of its delegated powers ; but when, as in this case, the jurisdiction of the inferior tribunal over the particular subsequent matter depends not upon an express grant of power but upon the execution of an alleged necessity, from which the disputed power is to be implied, the decision of such tribunal is neither final nor conclusive upon the courts."

In *Bankhead* v. *Brown*, 25 Ia. 540, Dillon C. J. speaking for a majority of the court lays down as the law the following propositions : " 1st. That the constitutional limitation prohibits by implication the taking of private property for any private use whatever without the consent of the owner.    2d. It forbids the forcible taking of private property for any but *public* use, and then only upon just compensation being made. 3d. When the public exigencies demand the exercise of the power of taking private property for the public use, is solely a question for the Legislature, upon whose determination the courts can not sit in judgment.    4th. What is such public use, as will justify the exercise of the power of eminent domain, is a question for the courts.    But 'if a public use be declared by the Legislature, the courts will hold the use to be public, unless it manifestly appears by the provisions of the act, that they can have no tendency to advance and promote such public use.'    Per Shaw, C. J. in *Hazen* v. *Essex Co.*, 12 Cush. 475." See also *Challis* v. *Atchison, Topeka and Santa Fe Railroad Co.*, 16 Kans. 117 ; *County Court of St. Louis Co.* v. *Griswold et al.*, 58 Mo. 175 ; *Giesy* v. *C. W. & Z. R. Co*,. 4 Ohio St. 308.

In *North Mo. R. R. Co.* v. *Gott*, 25 Mo. 540, it was. alleged in the petition in behalf of the company for the condemnation of the land upon which its road was located, that the road passed hills and valleys, and that a strip of one hundred and fifty feet in width was necessary for the construction of the road.    The seventh sec-

tion of the charter gave the company a right to hold a strip of land the whole length of the road not exceeding one hundred feet in width " providing that in passing hills or valleys the said company is authorized to extend said width in order to effect said object." The court held, that the allegation, that " the road passed hills and valleys through the defendant's lands and that the width of one hundred and fifty feet was necessary," was not traversable. The court says : " The statement was no doubt made on the report of the engineer, whose judgment in that matter controlled the plaintiff, and the allegation was not traversable by the defendant." No authority is cited for this extraordinary decision, which assumes, that a railroad engineer cannot do wrong or be mistaken.

It seems to be well settled, that the public use, for which private property may be taken, is a question for the Legislature. In *Secomb* v. *Railroad Co.*, 23 Wall. 109, it was held that the mode of exercising the right of eminent domain, in the absence of any power of organic law prescribing a contrary course, is within the discretion of the Legislature. There is no limitation upon the power of the Legislature in this respect, if the purpose be a public one, and just compensation be paid or tendered to the owner of the property taken. *Water Works Company of Indianapolis et al.* v. *Burkhart et al.*, 41 Ind. 364; *Wise* v. *St. P., Stillwater & Taylor's Falls R. Co.*, 18 Minn. 155.

How much land the corporation may take, unless defined by the law, is a question for the courts and should be ascertained, before the commissioners to assess its value are appointed. *Reed &c.* v. *Louisville Bridge Co.* 8 Bush 69. In *Railroad Co.* v. *Greely* 17 N. H. 47, it was held, that whether the use is public within the meaning of the act of the Legislature is a question for the courts; and the mere recital in the act, that the use is public, will not take from the courts the power of enquiring whether the use to which the property is to be appropriated is a pub-

1881
Spring
Special Term.

The B. & O. R.
R. Co.
v.
The P. W. &
Ky. R. R. Co.

lic use. *Carter* v. *The Tide Water Co.*, 18 N. J. Eq. 68; *Harris* v. *Thompson*, 9 Barb. 350.

A great many questions as to the right to *take* certain property for public use have been regarded as judicial questions, and have been adjudicated by inferior courts. Among such questions are the following:—Whether the use for which the property was sought to be taken was a public one? *Osborn* v. *Hart*, 24 Wis. 89; *Paluret's Appeal*, 67 Pa. 479; *Sadler* v. *Langham*, 34 Ala. 311; *Deanville Cemetery Association*, 66 N. Y. 569; *City of East St. Louis* v. *St. John*, 47 Ill. 463; *West Va. Transportation Co.* v. *Volcano Oil and Coal Co.*, 5 W. Va. 382; *Salt Co.* v. *Brown*, 7 W. Va. 191;—Whether the corporate powers of the applicant had ceased? *Atkinson* v. *M. & C. R. Co.*, 15 Ohio St. 21; *Brooklyn* v. *Winfield & Newton R. Co.*, 72 N. Y. 245. In the last named case it was held, that the legal existence of a corporation authorized to construct a railroad is at the foundation of the right to take property for its use under the exercise of the right of eminent domain; it is a fact, which it is compelled to allege in proceeding to acquire title to land, and which may be controverted. See also *Prospect Park and Coney Island R. Co.*, 67 N. Y. 371;—Whether the party making the application has been able to agree with the land-owner? *Vail* v. *Morris & Essex R. Co.*, 1 Zab. 189; *W. Va. Trans. Co.* v. *Volcano Oil and Coal Co.*, 5 W. Va. 382; *O'Hara* v. *Pennsylvania R. Co.*, 25 Pa. 445; *Ells* v. *Pacific R. Co.*, 51 Mo. 200; *Lind* v. *Clemens*, 44 Mo. 540; *Contracosta R. Co.* v. *Moss*, 23 Cal. 323; *Darlington* v. *United States*, 82 Pa. 382;—Whether the applicant was authorized by law to take the land for the purpose for which he was seeking to condemn it? *Miami Coal Co.* v. *Wigton*, 19 Ohio St. 560; *City of East St. Louis* v. *St. John*, 47 Ill. 463; *Renselaer & Saratoga R. Co.* v. *Davis*, 43 N. Y. 137;—Whether the particular land described in the application, was necessary for the purpose for which it was sought to be condemned? *So. Ca. R. Co.* v. *Blake*, 9 Rich. L. 228;

*Reed* v. *Louisville Bridge Co.*, 8 Bush 69 ; *Renselaer &* 1881 Spring Special Term.
*Saratoga R. Co.* v. *Davis*, 43 N. Y. 144;—Whether the
applicant had the right to take property, which had al-The B. & O. R. R. Co.
ready been acquired and held for public use ? *N. J.* The P. W. & Ky. R. R. Co.
*Southern R. Co.* v. *Long Branch Com'rs*, 39 N. J. L. 28;
*N. Y. & Brighton Beach R. Co.* 20 Hare 201 ; *Contracosta
R. Co.* v. *Moss*, 23 Cal. 324; *Evergreen Cemetery Asso-
ciation* v. *New Haven*, 43 Conn. 234;—Whether the de-
scription in the application and accompanying plat suffi-
ciently identified the property proposed to be taken ?
*N. Y. Central and Hudson River R. Co.*, 70 N. Y. 191 ;
*Pennsylvania R. Co.* v. *Porter*, 29 Pa. 165 ; *Darlington*
v. *United States*, 82 Pa. 382; *Metropolitan City R. Co.* v.
*Chicago, &c., R. Co.*, 87 Ill. 317 ; *Gregory* v. *Cleveland,
&c., R. Co.*, 4 Ohio St. 675 ; *State* v. *Eastern & Amboy
R. Co.*, 36 N. J. L. 181 ; *Carlton Street*, 16 Hare 497 ;
*Atlantic & Ohio, R. Co.* v. *Sullivant*, 5 Ohio St. 276.

If then all these questions, so vital to the rights of the
citizen, can be heard and determined in the inferior
court, if either of the parties to the controversy feels
aggrieved by the judgment of the court, why may not
the judgment be reviewed in the Appellate Court? It
seems to me, that the correct rule is laid down in *New
Orleans Railroad Co.* v. *Hemphill*, 35 Miss. 17, which is :
Where the statute on condemnation proceedings does not Syllabus 8.
declare, that the judgment shall be final, the judgment
of the inferior court must stand as all other judgments,
and the aggrieved party is entitled to the benefit of the
general law regulating writs of error and *supersedeas*.

Our statute, is silent on the subject of the review of
such judgments ; but the constant practice of our courts
has been to review such judgments in the Appellate
Court. *Transportation Co.* v. *Volcano Oil & Coal Co.*, 3
W. Va. 382 ; *Chesapeake & Ohio R. Co.* v. *Pack*, 6 W. Va.
397 ; *Valley Salt Co.* v. *Brown*, 7 W. Va. 191 ; *Chesa-
peake & Ohio R. Co.* v. *Patton*, 9 W. Va. 648, in which
there was a *supersedeas* awarded as well as a writ of error ;
*Chesapeake & Ohio R. Co.* v. *Hoard*, 16 W. Va. Such

1881
Spring
Special Term.

The B. & O. R.
R. Co.
v.
The P. W. &
Ky. R. R. Co.

cases were reviewed upon appeal in *Osborn* v. *Hart*, 24 Wis. 89; *Palurit's Appeal*, 67 Pa. 479; *Sadler* v. *Langham*, 34 Ala. 311; *Deansville Cemetery Association*, 66 N. Y. 569; *Renselaer & Saratoga Co.* v. *Davis*, 43 N. Y. 137; *City of East St. Louis* v. *St. John*, 47 Ill. 464; *Railroad Co.* v. *Blake*, 9 Rich. L. 228; *Matter of New York & B. R. Co.*, 20 Hun. 202; *Matter New York Central & H. R. R. Co.*, 70 N. Y. 191; *Met. City Railway Co.* v. *Chicago W. D. R. Co.*, 87 Ill. 317; *Matter of Widening Carleton Street*, 16 Hun. 497; *County of St. Louis* v. *Griswold et al.*, 58 Mo. 175; *Bankhead* v. *Brown*, 25 Ia. 540; —Upon writ of error in *Giesy* v. *C. W. & Zanesville R. Co.*, 4 Ohio St. 308; *North Mo. R. Co.* v. *Gott*, 25 Mo. 540; *Atlantic & Ohio R. Co.* v. *Snllivant*, 5 Ohio St. 276; *Challey's* v. *A. T. & Santa Fe R. Co.*, 16 Kan. 117;—Upon *certiorari* in *New Jersey, &c. R. Co.* v. *Long Branch Commissioners*, 39 N. J. L. 28; *Pennsylvania R. Co.* v. *Porter*, 29 Pa. 165.

We have therefore no doubt, that this case is properly here for review upon writ of error, and that the *supersedeas* was properly granted.

It is suggested by counsel for the defendant in error, that the relief open for a party, whose land is improperly taken, is by injunction; but it seems to me, that after a court of law has taken jurisdiction in condemnation proceedings, and the parties are notified to appear to such proceedings, as it is certainly requisite to the validity of the proceedings that they should be, a court of equity would have no jurisdiction to interfere by injunction to stay the proceedings, unless according to some of its established rules applicable alike to other proceedings at law such jurisdiction would attach. In *New Central Coal Company* v. *George's Creek Coal and Iron Company*, 37 Md. 537, it was held that irregularities in taking the inquisition of condemnation, inadequacy of the damages assessed, and all such questions can only arise and be decided by the tribunal, to which the inquisition is required to be returned for ratification or re-

1881
Spring
Special Term.

The B. & O. R.
R. Co.
v.
The P. W. &
Ky. R. R. Co.

jection. A court of equity can properly exercise no jurisdiction over such question. When however proceedings have been instituted to condemn land for a railroad, and the inquisition is returned to the court, and before any action is had thereon, the parties seeking the condemnation enter upon the premises described in the inquisition, and commence to construct their road, such conduct is clearly unauthorized, and a court of equity will enjoin such unlawful entry, until the final action of the court on the inquisition and the actual payment of the damages in the event of the. ratification of the inquisition.

It is objected, that the pleadings made and the trial of the issues by a jury were irregular, as the statute, under which the proceeding was had, did not require formal pleadings and a trial by jury. It is true, that in but few of the adjudicated cases it appears, that there were formal pleadings and a trial of the issues by a jury. In Virginia in *Railroad Co.* v. *Switzer,* 26 Gratt. 661, it was held, that according to a proper interpretation of the statute, similar to ours, all matters affecting the validity of the report and the action of the commissioners are open for investigation without notice, rule or pleading. In *Concord Railroad Co.* v. *Greely,* 17 N. H. 47, the objection to the taking of the land was raised in the inferior court by exceptions to the commissioner's report, and only in that manner, and said exceptions were passed upon by the Appellate Court. The same objection was raised in the same manner in *Hingham & Percy Bridge and Tunnel Co.* v. *County of Norfolk,* 6 Allen 353, and *Neff* v. *Cincinnati,* 32 Ohio St. 218. While such objections may be raised by exceptions to the commissioner's report, yet it is a practice, that should be discouraged. In a condemnation proceeding the first question to be decided is, shall the land be condemned for the use of the petitioner? And it is the better practice to determine this question, before the commissioners to assess its value are appointed, *Chesapeake & Ohio*

Syllabus 9

Syllabus 10.

1881
Spring
Special Term.

The B. & O. R
R. Co.
v.
The P. W. &
Ky. R. R. Co.

Syllabus 11.

Syllabus 12.

*Railroad Co: v. Pack,* 6 W. Va: 399. In settling this question, while it may be done without formal pleading, yet there can be no irregularity in raising the objections to the condemnation by proper pleas, as the defence is thus stated with legal precision. While a jury on the question of the appropriation of the land, is not required by the statute, yet under section 5 of chapter 131 of the Code the court was authorized to direct, that the issues be tried by a jury, which in this case the court did.

The record in this case is well made up. I think it is a model of its kind ; and I have endeavored, in a succint statement to preserve to the profession the result of the labor of the learned counsel on both sides, as it commends itself to my mind, as among the clearest and most sensible records presenting pleadings, &c. on the question of the taking of private property for public use, that I have found in the many books I have examined on the subject.

One error assigned is, that the court refused to allow defendant in error to open and conclude the argument to the jury. Who has the affirmative of the issue ? In condemnation proceedings as to the value of the land the owner has the right to open and close. *Oregon & Cal. R. R. Co.* v. *Barlow,* 3 Oregon 311 ; *Minnesota R. Co.* v. *Doran,* 17 Minn., 188 ; *Burt* v. *Wigglesworth,* 117 Mass. 302. As to a mere matter of the conduct of a trial, it must be clear that injustice has been done, before an Appellate Court will reverse a judgment for such reason.

In *Fry* v. *Bennett,* 28 N. Y. 324, it was held, that the question, as to which party shall open and close the case, should be regarded as one of practice, to be regulated by the discretion of the judge, and his decision upon it is not a subject of exception. If the court had the power to review a decree upon a matter, which is the subject of discretion, it would not be disposed to reverse

a judgment for an error in the exercise of such discretion.

In *Preston* v. *Walker*, 26 Ia. 205, it was held, that while the right to review the question, as to which party holds the affirmative of the issue and has the right of opening and closing the argument, is not absolutely denied, yet there must be a clear case of prejudice, to justify a reversal on this ground after a trial upon the merits.

In *Brandford* v. *Freeman*, 5 Exch. 734, it was held, that an incorrect ruling at *nisi prius*, as to the proper party to begin, is no ground for a new trial, unless it also appears, that substantial injustice has resulted from it.

In *Marshall et al.* v. *Am. Express Co.*, 7. Wis. 1, it was held, that " as a matter of practice the party holding the affirmative of the issue has the right to open and close the argument to the jury ; but a mistake of the judge in this respect is not a ground of error to reverse the judgment, unless it is manifest, that injustice has been done."

As the party seeking the appropriation of the land, has the affirmative of the issue upon its right to take it, such party is entitled to open and conclude the argument to the jury on that question. Whether this Court would reverse a judgment, because the court below erred in refusing to a party the opening and closing of the argument to the jury, we do not decide, as the question does not arise, as the court below in this case decided correctly on this point.

Another ground of error assigned is, that the challenge to the juror Moffatt was overruled. The only ground of challenge to the juror was, that he was a citizen of Ohio county and paid county-taxes as such citizen. Sec. 63 of chap. 115 of the Acts of 1872–3 effectually disposes of this assignment of error. The last clause of said section declares " nor shall any one be incompetent as a juror, because he is an inhabitant of the county or liable to the county-levies."

107

1881
Spring
Special Term.
The B. & O. R.
R. Co.
v.
The P. W. &
Ky. R. R. Co.

It is also assigned as error, that the court refused to permit, pleas numbers two and three to be filed. The pleas are the same in substance, number two applying to one parcel of land, number three to the other parcel.— The substance of the pleas is, that when the condemnation proceeding was commenced, the said parcels of land were, and still are owned, and held by the defendant for the purpose of being used in its said business, and for no other purpose, and that it is not necessary for the said petitioner following the general course of its road to build its said road upon said land. The pleas were insufficient for reasons to be hereinafter stated, when we discuss the instructions asked and refused by the court.

It is also assigned as error, that the court overruled defendant's objection to the replication to special plea number four. Special plea number four is in substance, that the land in said plea mentioned was at the beginning of said condemnation proceedings, and still is, held and owned by defendant for the purpose of being used in its said business, and was at the time of the beginning of said proceedings, and still *is in use* by the said defendant in its said business, and that in following the general course of the petitioners road it is not necessary for said petitioner to build its road over said land. The special replication in substance is, that the use of said parcel of land by defendant was not in good faith; that in view of the commencement of the condemnation proceedings, the defendant built a trestle and placed cars upon it for the purpose of preventing the condemnation of the land.

Syllabus 15.

It is no obstacle in the way of the appropriation of land, owned by one railroad company for the use of another, that merely to prevent the condemnation of the land the former puts it to a use, not necessary for the proper exercise of its franchise. The replication was properly filed. *Morris* v. *The Schallsville Branch, &c. R. R. Co.*, 4 Bush 448; *Harris* v *Commissoners*, 2 Hill 444; *P. P. & J. R. R. Co.* v *P. & S. R. R. Co.*, 66 Ill. 176.

It is assigned as error, that the court refused to give

1881
Spring
Special Term.

The B. & O. R
R. Co.
v.
The P. W. &
Ky. R. R. Co.

plaintiff's instructions numbers one and three. Instruction number one is as follows: " The jury are instructed to find for the Baltimore & Ohio Railroad Co. the issue formed on the fifth plea with reference to the strip of land west of Water street and south of Alley 19, if they believe, that it was at the beginning of the condemnation proceeding, and still is, used by the Baltimore & Ohio Railroad Co. for the purposes of its business, without reference to the reasons which may have actuated the said company in putting it to such use." That is to say, that a railroad company may in any case defeat the condemnation of any of the land it owns for the purposes of another railroad company by merely putting the land to some use, however unnecessary for the prosecution of its legitimate business, and for the mere purpose of preventing the condemnation thereof. This proposition cannot be sustained. Works of internal improvement cannot be prevented or hindered by any such means. Such a policy would favor monopolies and very materially interfere with the prosperity and growth of the State. This was a sufficient reason for refusing the instruction.

Instruction number three is a follows: " If the jury believe from the evidence, that any part of the land lying west of Water and north of Twentieth street and sought to be condemned by the Pittsburg, Wheeling & Kentucky Railroad Co. was at the time of the commencement of this condemnation proceeding in the *bona fide* use of the Baltimore & Ohio Railroad Co. for the purposes of its legimate business, they should find for the said Baltimore & Ohio Railroad Co. as to the whole of the portion thereof so proposed to be condemned, notwithstanding that any other portion of the same parcel may not have been in use as aforesaid; and therefore if the jury believe the land so proposed to be condemned includes a portion of the buttress of the bridge of the Baltimore & Ohio Railroad Co. erected by it across Wheeling creek, and if they believe, that the said bridge

1881
Spring
Special Term.

The B. & O. R.
R. Co.

The P. W. &
Ky. R. R. Co.

and buttress were erected and are maintained and used by the said Baltimore & Ohio Railroad *bona fide* for the purposes of its legitimate business, then the jury shall find for the Baltimore and Ohio Railroad Co. the issues as to the whole of the land lying west of Water and north of Twentieth street and so sought to be condemned."

One fatal objection to this instruction is, that it propounds as law in a condemnation proceeding, that if *all* of the land sought to be condemned is not liable to be taken, then in that proceeding no *part* thereof can be taken. In a condemnation proceeding the jury or court may find, that a part of the land sought to be condemned may be taken, and not the residue. It might be, that a railroad company would seek to condemn a strip one hundred and fifty feet wide through a farm, when it appeared, that only one hundred feet wide was necessary, the one hundred feet only in that case would be condemned.

It is also a mistake to suppose, that land in use for certain purposes by a railroad company is not liable to condemnation. Pleas numbers two and three did not so much as aver, that the lands were in present use; and they were of course properly rejected. There is nothing so sacred in the title of a railroad company to property, that it cannot be taken under the exercise of the right of eminent domain. I understand the law to be, that property belonging to a railroad company and not in actual use *necessary to the proper exercise of the franchise thereof* may be taken for the purposes of another railroad under the general railroad law of the State. An express legislative enactment is generally required in order to take such property in use by a railroad company, except where the proposed appropriation would not destroy or greatly injure the franchise of the company, or render it difficult to prosecute the object thereof. If such consequences would not follow, a general grant is sufficient. *Enfield Toll Bridge Co.* v. *Hartford & New Haven R. Co.*, 17 Conn. 40; *Little Miami R. Co.,* v. *Day*, 23 Ohio St.

Syllabus 16.

Syllabus 17.

Syllabus 18.

510; *Tuckaho Canal Co.* v. *T. R. Co.*, 11 Leigh 79; 3 Gratt. 258.

This being the law, the objection of petitioner to the filing of pleas numbers four and five ought to have been sustained, and the said pleas ought not to have been filed, as they were each fatally defective in not averring, that the use therein set forth " *is necessary to the proper exersise of the franchise of the defendant.*" But as this was not an error to the prejudice of the defendant in the court below, it has no reason to complain, that the pleas were filed, and of course the judgment of the court would not be reversed for that reason.

In *Richmond &c., R. Co.* v. *Louisa R. Co.*, 13 How. 71, it appeared, that the Legislature of Virginia incorporated the Richmond, Fredericksburg & Portsmouth Railroad Co. and in the charter pledged itself not to allow any other railroad to be constructed between the places or on any portion of that distance, the probable effect of which would be to diminish the number of passengers traveling between the one city and the other upon the railroad authorized by that act, or to compel the said company in order to retain such passengers to reduce the passage-money. Afterwards the Legislature incorporated the Louisa Railroad Company, whose road came from the west, and struck the first named company's track nearly at right angles at some distance from Richmond; and the Legislature authorized the Louisa road to cross the track of the other and continue their road to Richmond. The court held, that in the last grant the obligation of the contract with the first company was not impaired within the meaning of the Constitution of the United States; that in the first charter there was an implied reservation of the power to incorporate companies to transport other articles than passengers; that a franchise could be condemned in the same manner as individual property. *West Bridge Co.* v. *Dix et al.*, 6 How. 507.

In *Grand Rapids &c. R. R. Co.* v. *Grand Rapids & Indiana R. R. Co.*, 35 Mich. 265, it was held, that one

1881
Spring
Special Term.

The B. & O. R.
R. Co.
v.
The P. W. &
Ky. R. R. Co.

1881
Spring
Special Term.

The B. & O. R.
R. Co.
v.
The P. W. &
Ky. R. R. Co.

railroad has no right to appropriate without compensation the franchise or property of another for the construction of its road. The fact, that property has been taken for a particular public use, does not make it public property for all purposes; and the property-rights of a railroad company in its right of way are protected by the same restrictions against appropriation by any other railroad company for railroad purposes or other public use, as is afforded by the Constitution and laws in the case of the private property of an individual. *Baltimore & Havre de Grace Transportation Co.* v. *Union R. R. Co.,* 35 Md. 224.

It is insisted by counsel for plaintiff in error, that where a corporation is authorized by its charter or a general law to take by condemnation the land required for its purposes, it cannot under such general authority condemn property already appropriated to public use by another corporation; that to authorize it to do so, the power must be granted to it by express terms, or by necessary implication. For this position they rely upon: *B. & M. R. Co.* v. *L. & L. R. Co.,* 124 Mass. 368; *Housatonic R. Co.* v. *Lee & Hudson River R. Co.,* 118 N. Y. 391; *Evergreen Cemetery Association* v. *New Haven,* 43 Conn. 234; *Matter of B. & A. R. R. Co.,* 53 N. Y. 574; *Matter of City of Buffalo,* 68 N. Y. 167.

In the case in 124 Mass. it appeared, that the location of the proposed extension of the defendant's railroad, of which the plaintiff complained, was twenty-six feet wide and crossed upon a level two branches of the plaintiff's railroad about a quarter of a mile apart; and at these crossings and for the whole distance between them was for a small portion of its width upon the plaintiff's depot and station grounds; but for the greater part of its width was along and within the plaintiff's location of 1847, and included a great part of the signal houses, of the store-house, of the paint-shop and of the carpenter's-shop, and of the freight platform;—that the construction of the proposed extension of the defend-

1881
Spring
Special Term.

The B. & O. R.
R. Co.

The P. W. &
Ky. R. R. Co.

ant's road would be a serious injury to the plaintiff, and would greatly interfere with its necessary use of the tracks, signal houses, &c. The court in its opinion quoted with approbation, what had been said in the case in 118 Mass.: that a charter to build and maintain a railroad between certain points without describing its course and direction but leaving that to be determined and established by the corporation, as provided by the general laws, does not *prima facie* give any power to lay out the road over land already devoted to and within the recorded location of another railroad. It is not to be presumed, that the Legislature intended to allow land thus devoted to one public use to be subjected to another, unless the authority is given in express words or by necessary implication."

In the case in 68 N. Y. it was held, that "The Legislature may interfere with property held by a corporation for one public use and apply it to another, and may delegate the power so to do to another corporation, but such delegation must be in express terms or arise from necessary implication. In determining whether a power to take lands given in general terms was meant to have operation upon lands already devoted by legislative authority to a public purpose, it is proper to consider the nature of the prior use and the extent, to which it will be impaired or diminished by the taking for the subsequent use. A legislative intent to subject lands devoted to a public use, already in exercise, to one which might thereafter arise, will not be implied from a gift of power made in general terms without having in view a then existing and particular need for the subsequent use ; at least where both uses cannot stand together, and the latter, if exercised, must supersede the former."

It will be observed, that in these last cases the interference with the franchise was great, and much injury would have been sustained by the companies, if their property had been taken. But the taking of a portion of a buttress might inflict no injury at all upon the Bal-

1881
Spring
Special Term.
The B. & O. R.
R. Co.
v.
The P W. &
Ky. R. R. Co.
timore & Ohio Railroad Co. The courts will take care to see, that one railroad company is not materially injured for the benefit of another, and where no such material injury will result, the onward march of improvement demands, that a great work of internal improvement shall not be impeded by imaginary injury to another corporation. The instruction was properly refused.

It is assigned as error, that the court refused to set aside the verdict and grant a new trial. Upon a careful examination of the evidence we think it fully sustains the verdict. But it is insisted by counsel for plaintiff in error, that the evidence shows, that more land was included in the upper parcel of land sought to be condemned, than was necessary for the purposes of petitioner, and the verdict ought therefore to be set aside.

Syllabus 19.
It is true, as contended by the counsel, that private property can only be taken for a public use, and no more of such property can be taken than is necessary for such use, which must be determined when proper from the statute upon the subject and the facts appearing in the case. Therefore when it clearly appears, that the property taken, or a part thereof, is not necessary for the public use, for which such condemnation is sought, as to such part the taking is unlawful. *Matter of Albany Street,* 11 Wend. 149; *Dunn* v. *Charleston,* Harp. (S. C.) 189; *Buckingham* v. *Smith,* 10 Ohio 288; Cooley Con. Lim. 539. But does it appear in this record, that more land was condemned than was necessary for the public use set forth in the petition? The only evidence before the jury on that subject was brought out on the cross-examination of the engineer of the petitioner, who said: "For any structure which petitioner would put on the parcel of land just south of Wheeling creek, it would only need twelve and one half feet on each side of its centre line. For the remainder of the parcel west of this twenty-five feet petitioner had no immediate use; and witness could not say, that it would ever be useful. It was one of those cases where railroads sometimes con-

demn all of the ground that is rendered useless to the former owner. In cases where the remainder of the ground was cut off from connection with the adjacent land, and where the damages for crossing amounted to as much as the whole land was worth, it was just as well to take the whole."

Whether the whole of the upper parcel south of Wheeling creek was necessary for the use of petitioner was not an issue before the jury. The petition particularly described it and claimed, that it was necessary for the use of the petitioner, which was a public use. The defendant in the county court did not take issue on that allegation in the petition. The only issues as to that parcel were, " that the land last hereinbefore mentioned was at the time of the beginning of the said condemnation proceedings, and still is, held and owned by the said defendant for the purpose of being used in its said business, and was at the time of the beginning of said proceedings, and still is, in use by the said defendant in its said business; and that in following the general course of the petitioner's road it is not necessary for the said petitioner to build its said line of road over said last mentioned land." Therefore it is clear, that the said evidence is not responsive to any issue before the jury.

On a motion for a new trial, in a condemnation case, as in any other case, evidence, that is not relevent to any issue before the jury, will not be considered by the court. This evidence then as we have seen was given to the jury and not to the court, and the court could not therefore regard it. If, as is contended, the petitioner is compelled to prove to the court in a condemnation proceeding, that the land described in the petition is necessary for the public use, for which the condemnation is sought, whether or not it is by the land-owner in any way denied that it is necessary, then we say, that the evidence before the court, if any, is not certified, nor it is shown in the record, that it was all before the court; and for any thing to the contrary that appears to us, it may have been

108

1881
Spring
Special Term.
The B & O. R.
R. Co.
v.
The P. W. &
Ky. R. R. Co.

fully proved to the court, that the whole of the said parcel of land was necessary for the public use, to which it was asked to be appropriated. It will be remembered, that the record nowhere shows either by exceptions to the commissioners' report or otherwise, that the plaintiff in error denied, that the whole of said parcel of land was necessary for the use of the petitioner. The court therefore did not err in refusing to set aside the verdict and grant a new trial, on the ground that the evidence showed, that it was not necessary, that the whole of the parcel should be taken, and the judgment is not for that reason erroneous. In a condemnation proceeding, unless the land-owner, who is before the court, in some form denies, that the land sought to be condemned is necessary for the use of the petitioner, he will in the appellate court be deemed to have waived any such objection to the condemnation, if any such existed.

Syllabus 21.

Syllabus 22.

The buttress of the bridge, a small portion of which was taken, is not necessary to the support of the bridge and the exercise of the franchise of the company, as the evidence shows; neither will the taking thereof endanger the bridge. If the mere fact, that a part of the buttress extends to where the petitioner's track would be constructed, will prevent the road being located there in this particular case, the buttress might have been extended so far toward the river, as to have prevented the construction of petitioner's road contiguous to the river, notwithstanding the fact, that the extension of the buttress would not benefit the defendant. Therefore the court did not err in refusing to set aside the verdict because a small part of the buttress was taken. As to the lower parcel of land we see nothing in the evidence, that would authorize the court to interfere with the verdict and judgment.

Syllabus 23.

It is also assigned as error, that the commissioners were directed by the court to ascertain compensation for damages to the residue of the land, portions of which were sought to be condemned. It is well settled, that in cases

where State Constitutions provide, that private property shall not be taken for public use without just compensation, the damages to the residue of the tract, a part of which was taken, is an element of damages to be considered by the commissioners or jury, as the case may be. *James River & Kanawha Co.* v. *Jason*, 9 Leigh 313; Cooley on Con. Lim. 568, note and cases cited; *Deaton* v. *County of Polk*, 9 Ia. 594; *Sommerville & Easton R. Co.* v. *Dougherty*, 2 Zab. 495. Our Constitution makes no change in this rule, but goes further, and provides, that where no part of the land is *taken*, yet if it is *damaged* compensation therefor shall be paid or secured to be paid. We think the direction of the court to the commissioners was proper.

The commissioners' report is also excepted to, because the parcel south of Alley 19 is not sufficiently identified. I see nothing in this exception. The deed of the land is referred to in the petition, which petition describes the strip as one hundred and thirty-two feet long and five feet wide taken off the east end of the two lots conveyed by said deed besides specifying particularly, where the said two lots are located. The other exceptions to the commissioner's report, we have already considered in this opinion.

The remaining question to be considered is: Should the case have been on the motion of the defendant removed to the circuit court of the United States? Objections are made, that if the proceedings were removable, the record did not show such a state of facts, as would justify the removal. The facts, upon which a petitioner bases his right to the removal of a case from a State to a Federal court must be made to appear to the satisfaction of the State court; but no particular mode is prescribed, in which the facts are to be made to appear. *People* v. *Superior Court*, 34 Ill. 356. The State court has a right to judge of the sufficiency of the petition.

The Supreme Court of the United States in the cases of *Armory* v. *Armory*, 5 Otto 186, and *Insurance Com-*

1881
Spring
Special Term.

The B. & O. R.
R. Co.
v.
The P. W. &
Ky. R. R. Co.

Syllabus 24.

1881
Spring
Special Term.
The B. & O. R.
R. Co.
v.
The P. W. &
Ky. R. R. Co.

*pany* v. *Peckham, Id.* 183, held, that the State court properly refused to remove, when the citizenship of the parties being of different States did not appear from the pleadings, and was not sufficiently alleged in the petition for removal. In the cases of *Railroad Co.* v. *McKinley,* 9 Otto 148, and *Varnevar* v. *Bryant,* 21 Wall. 41, the Supreme Court of the United States has affirmed the rulings of the State court refusing to allow removals, where there had been a trial, or after judgment, showing that it is conceded by that court, that the State courts have the right to refuse the removal, where the records and proceedings do not show a proper case for removal.

It is claimed that the petition for removal is insufficient, if it does not show, that the plaintiff was a citizen of West Virginia at the time the proceeding was begun; that it is not sufficient to state the citizenship at the time of the application for removal. *Holden* v. *Putnam Insurance Co.,* 46 N. Y. 1; *Indianopolis Railroad Co.,* v. *Risely,* 50 Ind. 60; *Savings Bank* v. *Benton,* 2 Metc. (Ky.) 241; *People* v. *Superior Court,* 34 Ill. 356; *Tapley* v. *Martin,* 116 Mass. 275; *Pechner* v. *Phoenix Insurance Co.,* 65 N. Y. 195; Affirmed 5 Otto 185. These cases all fully sustain the proposition. The fact need not necessarily appear upon the face of the petition; the facts, upon which the petitioner bases his right to removal must be made to appear to the satisfaction of the State court, but no particular mode is prescribed. It may be by the admission of parties, by an affidavit, or by testimony of witnesses; but it should be made a part of the record however appearing. *People* v. *Superior Court, supra.* The petition becomes a part of the record, and should state facts, which taken in connection with such as already appear, entitle the petitioner to a removal of the case. *Insurance Co.* v. *Pechner,* 5 Otto 185. For the purpose of the transfer of a cause the petition, which the statute requires, performs the office of pleading. Upon its statement in connection with other parts of the record the court must

1881
Spring
Special Term.

The B. & O. R.
R. Co.
v.
The P. W. &
Ky. R. R. Co.

act in declaring the law upon the question it presents. It should therefore set forth the essential facts not otherwise appearing in the case, which the law has made conditions precedent to the change of jurisdiction.

The petition and record in this case would authorize the removal, if it was such a case as could be removed. But could this case have been removed to the circuit court of the United States? The act of Congress approved March 3, 1875, provides: "That any suit of a civil nature at law or in equity now pending or hereafter brought in any State court, where the matter in dispute exceeds exclusive of costs the sum or value of $500.00 * * in which there shall be a controversy * * between citizens of different States, * * either party may remove said suit into the circuit court of the United States for the proper district."

In the case of *Kohl* v. *United States*, 1 Otto 367, the government of the United States instituted condemnation proceedings in the circuit court of the United States for the Southern District of Ohio to appropriate a parcel of land in the city of Cincinnati as a site for a post-office and other public uses. The Supreme Court held, that the right of eminent domain exists in the government of the United States and may be exercised by it within the States, so far as is necessary to the enjoyment of the powers conferred upon it by the Constitution. There is nothing in this case, that would intimate even, that such a case, as we are now considering, could be removed to the Federal court. By entering into the Union of the States and subscribing to the Constitution of the United States the State of Ohio gave up her sovereign control over so much of the land within her borders, as was necessary for the public use of the United States government, and consented, that the United States government might through its courts condemn such of the private property of any of the citizens of Ohio, as was necessary for the public use of the United States. This must be so in the very nature of things;

1881
Spring
Special Term.

The B. & O. R.
R. Co.

v.

The P. W. &
Ky. R. R Co.

otherwise the State government might effectually exclude the government of the United States from locating on territory of the State any of the public buildings of the United States and public works, necessary to the prosperity if not the existence of the country; and if one State might do it, all might do the same, and thus the very government, which the States had created, would be powerless, and the powers conceded to it would be worthless.

In *Warren* v. *Wisconsin Valley R. R. Co.*, 6 Biss. 425, there was a condemnation of private property, and under the State law the defendant not being satisfied with the *amount* of the award appealed to the circuit court of the county. The statutes provided, that the appeal should be considered an action, pending in court subject to a change of the place of trial and appeal to the Supreme Court, as other actions, and should be entered by the clerk upon the records of the court by setting down the owners of the land, for whom such award was made and who are parties to the appeal, as plaintiffs, and the railroad company as defendants. It further declared, that the appeal should be tried by a jury, unless waived, and that costs should be awarded to the successful party on such appeal, &c. When the case was thus pending on appeal, the plaintiff being a citizen of Illinois filed his petition for removal to the circuit court of the United States, which petition the State court granted and the case was removed. In the circuit court the defendant moved to remand the case to the State court, on the ground that the circuit court of the United States had not jurisdiction thereof. One of the grounds relied upon in support of the motion was, that it was not a suit in such a sense as to be removable; that it was a special proceeding provided for ascertaining the damages and passing title to the land taken or condemned especially applicable to proceedings in the State courts, and not adapted to the practice and modes of proceedure in the United States courts; and that the rights of the railroad

1881
Spring
Special Term.

The B. & O. R.
R. Co.
v.
The P. W. &
Ky. R. R. Co.

company could not be obtained in the manner provided by the State statute in the United States court.

Hopkins, J., said: "If this objection states truly the essential nature of the case, it might be regarded as an answer to the jurisdiction of this Court. But does it? It was suggested, that the State could have provided for an assessment of damages by a sheriff's jury, and not given to the proceedings any attribute of a suit. Without determining that question either one way or the other, the point to be passed upon here is, has the State stripped the proceedings of all the characteristics of an action? I think it has not. It is true, the mode of getting the case into the courts is different, but after having provided a way of getting the matter into court, it is then treated as an action. The act says: 'the appeal shall be considered as an action pending in court, and from that time it is proceeded with in the same manner as other actions up to and including judgment and execution.' * * * But even if the proceedings in the State courts are different from the usual mode of prosecuting suits for the enforcement of private rights, still it is in effect a suit of a civil nature, in which the controversy is between citizens of different States. The plaintiff is seeking to obtain compensation of the defendants for the land they have taken from him. It involves the question of the value of the land taken by defendants and the damages of the plaintiff sustained thereby." The court overruled the motion to remand.

It will be observed, that the court regarded the controversy *entirely* as to the *amount* of *compensation,* to which the party, whose land had already been taken, was entitled.

The case of *Boom Co.* v. *Patterson,* 8 Otto 403, was a writ of error to the circuit court of the United States for the District of Minnesota. The Boom company was created under the laws of Minnesota and the owner of the land was a citizen of Illinois. The company was authorized under the laws of Minnesota to enter upon

1881
Spring
Special Term.

The B. & O. R.
R. Co.
v.
The P. W. &
Ky. R. R. Co.

and occupy any land necessary for properly conducting its business, and, where such land is private property, to apply to the district court of the county, in which it is situated, for the appointment of commissioners to appraise its value and take proceedings for its condemnation. The law is so framed as to give proper notice to the owners of the land and secure a fair appraisement of its value. If the award of the commissioners should not be satisfactory to the company or any one claiming an interest in the land, an appeal may be taken to the district court, where it is to be entered by the clerk "as a case upon the docket" of the court, the persons claiming an interest in the land being designated as plaintiffs and the company seeking its condemnation as defendant.— The court is then required to proceed "to hear and determine such case in the same manner, as other cases are heard and determined in said court". Issues of fact arising therein are to be tried by a jury, unless a jury be waived. The value of the land being assessed by the jury, or the court, as the case may be, the amount of the assessment is to be entered as a judgment against the company, which is subject to review by the Supreme Court of the State on writ of error.

Field Judge, in delivering the opinion of the court said: "The only question, on which there was any contention in the circuit court was as to the amount of compensation the owner of the land was entitled to receive, and the principle upon which the compensation was.to be estimated. But the company now raise a further question, as to the jurisdiction of the circuit court. Objections to the jurisdiction of the court below, that go to the subject-matter of the controversy, and not to the form merely of its presentation, or to the character of the relief prayed, may be taken at any time.— They are not waived, because they were not made in the court below.

" The position of the company on this head of jurisdiction is this, that the proceeding to take private prop-

erty for public use is an exercise by the State of its sovereign right of eminent domain, and with its exercise the United States, a separate sovereignty, has no right to interfere by any of its departments. This position is undoubtedly a sound one, so far as the act of appropriating the property is concerned. The right of eminent domain, that is, the right to take private property for public use, appertains to every independent government. It requires no constitutional recognition; it is an attribute of sovereignty. The clause found in the constitutions of the several States, providing for just compensation for property taken, is a mere limitation upon the exercise of the right. When the use is public, the necessity or expediency of appropriating any particular property is not a subject of judicial cognizance. The property may be appropriated by an act of the Legislature, or the power of appropriating it may be delegated to private corporations, to be exercised by them in the execution of works in which the public is interested.

"But notwithstanding the right is one, that appertains to sovereignty, when the sovereign power attaches conditions to its exercise, the enquiry, whether the conditions have been observed, is a proper matter for judicial cognizance. If that enquiry take the form of a proceeding before the courts between parties, the owner of the land on the one side and the company seeking the appropriation on the other, there is a controversy, which is subject to the ordinary incidents of a civil suit, and its determination derogates in no respect from the sovereignty of the State. The proceeding in the present case before the commissioners appointed to appraise the land was in the nature of an inquest to ascertain its value, and not a suit at law in the ordinary sense of these terms. But when it was transferred to the district court by appeal from the award of the commissioners, it took under the statute of the State the form of a suit at law and was thenceforth subject to its ordinary rules and incidents.

"The point in issue was the compensation to be made

1881
Spring
Special Term.

The B. & O. R.
R. Co.
v.
The P. W. &
Ky. R. R Co.

1881
Spring
Special Term.
The B. & O. R.
R. Co.
v.
The P. W. &
Ky. R. R Co.

to the owner of the land; in other words, the value of the property taken. No other question was open to contestation in the district court. *Turner* v. *Holloran*, 11 Minn. 253. The case would have been in no essential particular different, had the State authorized the company by statute to appropriate the particular property in question, and the owners to bring suit against the company in the courts of law for its value. That a suit of that kind could be transferred from the State to the Federal court, if the controversy were between the company and a citizen of another State, cannot be doubted. And we see no reason against the transfer of the pending case, that might not be offered against the transfer of the case supposed."

In this case the only question was as to the compensation to be paid to the owner of the land; and we can very well see, how a controversy between citizens of different States upon this question might be removable to the Federal court, because it is then much like any other controversy. As we have already seen, before the question of compensation can properly arise, the court must of necessity declare, that the private property sought to be appropriated must be condemned. With the question of the appropriation of the land sought to be taken the government of the United States, a separate sovereignty, unless it is the party seeking the condemnation, has nothing to do. And no foreign corporation can in the courts of the United States condemn the land of a citizen of a State for the use of such corporation; and if the Federal courts have not original jurisdiction for such purpose, a proceeding of that kind instituted in the State court cannot be removed to the Federal courts, because the Federal court can under no circumstances have jurisdiction in such cases. The contrary doctrine would destroy every vestage of control, which a State has over its own internal affairs. If there is any one thing, that was supposed to be sacred to the States, it is the mode by which the title to its lands shall be vested

Syllabus 26.

Syllabus 27.

1881
Spring
Special Term.

The B. & O. R.
R Co.
v.
The P. W. &
Ky. R. R. Co.

and divested. Take that away and the principle by which it has the right to regulate its own internal affairs is gone.

It has always been supposed that the State had the right to prescribe the terms, upon which any foreign corporation should do business within its borders. Now if it be true, as contended, that the Baltimore & Ohio Railroad Co. is a foreign corporation, is it not a startling proposition, that it has the right to go into the courts of another and separate sovereignty, and have such courts to condemn the lands of its citizens for the use of such foreign corporation, and that the State is powerless to protect them? The Constitution never conferred any such power upon the Federal courts. The idea, that such a thing could be done, has never been countenanced by any court. Here the whole controversy was as to the right of the petitioner to appropriate the land in question ; and if this case could have been removed to the Federal court, then it would follow, that if the Baltimore & Ohio Railroad Co. desired to have land condemned for its purposes, it might file its petition in the Federal court for that purpose against a West Virginia owner of land, if, as it claims, it is a foreign corporation. The Federal courts have no jurisdiction in such cases.

But is not the Baltimore & Ohio Railroad Co. a domestic corporation ? In *State* v. *Northern Central Railway Co.*, 18 Md. 193, it appeared that " By an act of the General Assembly of Maryland passed on the 10th day of March, 1854, entitled, 'An act to authorize the consolidation of the Baltimore & Susquehanna Railroad Co. with the York & Maryland Line Railroad Co., &c.,' the stockholders of the Baltimore & Susquehanna Railroad Co. were authorized to unite and consolidate their company or corporation with the York & Maryland Line Railroad Co., the York & Cumberland Railroad Co. and the Susquehanna Railroad Co. in the State of Pennsylvania, so as to form and constitute one company or corporation, to be called : " The Northern Central Railway

1881
Spring
Special Term.

The B. & O. R.
R. Co.

v.

The P. W. &
Ky. R. R Co.

Company," upon certain conditions therein expressed, &c. It was also enacted: " That whenever the corporation authorized by this General Assembly to be created by the consolidation of the Baltimore & Susquehanna Railroad Co. and the other companies above mentioned, to be known by the name of the Northern Central Railway Co. shall have been duly established and erected in conformity with the act of this General Assembly, *an act of the General Assembly of Pennsylvania authorizing the same,* and shall execute and acknowledge, and cause to be recorded in due form of law in the city of Baltimore and in all the counties of Maryland and Pennsylvania, in which the same shall be, a mortgage, &c., then the treasurer of the State was authorized to execute and deliver to said company and its assigns in perpetuity a conveyance and release of all the estate and interest of the State of Maryland in the then Baltimore & Susquehanna Railroad Co. and *all its property,* whether as stockholder, creditor or mortgager," &c.

The court held, that corporations owing their corporate existence in part to the State of Maryland, and exercising their franchises therein, may be restrained here from expending their funds for any other than corporate purposes anywhere. A plea by a corporation to the jurisdiction of a Maryland court, on the ground that the corporate property lies partly in another State, or that its corporate existence is derived in part from a charter of another State, is not tenable. Such a corporation must for the purposes of justice be treated as a separate corporation by the courts of each State, from which it derives its being, that is, as a domestic corporation to the extent of the State in which it acts, and as a foreign corporation as regards the other sources of its existence.

In *County of Allegheny* v. *Cleveland & Pittsburgh R. R. Co.*, 51 Pa. St. 228, Woodward, Chief Justice, after quoting from the opinion of Chief Justice Taney in *O. & M. R. Co.* v. *Wheeler,* 1 Black 286, says: " The Cleveland and Pittsburgh Railroad Company was first incor-

porated by the State of Ohio and then by Pennsylvania. It became thus a separate corporation in each State. * * A suit then against this corporation by a citizen of Pennsylvania is a suit against citizens of Ohio and Pennsylvania, who have united themselves in business under the shadow of the corporate name, and because some of the defendants are citizens of the same State as the plaintiff, the Federal courts have not jurisdiction, and the application to certify to that jurisdiction was properly refused."

In *Ohio and Mississippi Railroad Co.*, v. *Wheeler*, 1 Black 286, the declaration stated, that the plaintiff was "a corporation created by the laws of the States of Indiana and Ohio, having its principal place of business in Cincinnati in the State of Ohio ; that the corporation is a citizen of the State of Ohio, and Henry D. Wheeler, the defendant, is a citizen of the State of Indiana." The defendant pleaded to the jurisdiction of the court, averring that he was a citizen of the State of Indiana, and that the plaintiff was a body politic and corporate created, organized and existing in the same State under and by virtue of an act of Assembly of the State. The plaintiff demurred to the plea. It appeared, that Indiana first chartered the company, and afterwards the State of Ohio. Taney, C. J. said: "The averments in the declaration would seem to imply that the plaintiff claims to have been created a corporate body, and to have been endowed with the capacities and faculties it possesses by the co-operating Legislatures of the two States, and to be one and the same legal being in both States. If this were the case, it would not affect the question of jurisdiction in this suit. But such a corporation can have no legal existence upon the principles of the common law, or under the decision of this court in the case of the *Bank of Augusta* v. *Earle*, before referred to.

"It is true, that a corporation by the name and style of the plaintiff, appears to have been chartered by the States of Indiana and Ohio, clothed with the same

1881
Spring
Special Term.

The B. & O. R.
R. Co.
v.
The P. W. &
Ky. R. R. Co.

capacities and powers, and intended to accomplish the same objects, and it is spoken of by the laws of the States as one corporate body, exercising the same powers and fulfilling the same duties in both States. Yet it has no legal existence in either State except by the law of the State. And neither State could confer on it a corporate existence in the other, nor add to or diminish the powers to be there exercised. It may indeed be composed of and represent under the corporate name the same natural persons ; but the legal person or entity, or persons which exist by force of law, can have no existence beyond the limits of the State or sovereignty, which brings it into life and endows it with its faculties and powers. The president and directors of the Ohio and Mississippi Railroad company are therefore a distinct and separate corporate body in Indiana from the corporate body of the same name in Ohio, and they cannot be joined in a suit as one and the same plaintiff, nor maintain a suit in that character against a citizen of Ohio or Indiana in a circuit court of the United States."

The reason why the said corporation could not in the Federal court maintain a suit against either a citizen of Ohio or a citizen of Indiana according to this decision is obviously, because, if the suit were brought in Ohio against a citizen of either State, the corporation would be confronted with the fact, that it was a citizen of the same State. The Baltimore and Ohio Railroad Co. is as really a citizen of Maryland and of West Virginia, as is the Ohio & Mississippi Railroad a citizen of both Ohio and Indiana. True it was first chartered by Maryland on the 28th day of February, 1827, and eight days thereafter, on the 8th day of March, was chartered by Virginia. Under the decision of *Ohio and Mississippi R. Co.* v. *Wheeler* there can be no doubt, that the Baltimore & Ohio Railroad Co. is a domestic corporation of West Virginia and can not remove a case to the Federal court, when a citizen of West Virginia is a party thereto as plaintiff or defendant. If it is true as held

by the court in the case in 1 Black—that a corporation, a legal entity which exists by force of law, can have no existence beyond the limits of the State or sovereignty which brings it into life and endows it with facilities and powers, and that it cannot migrate, then, unless it exists by force of law outside of the State which gave it birth, it can be sued only in the State which brought it forth. It is not like a natural person enabled to travel on its own responsibility from county to county and from State to State, and liable to be sued in any transitory action, wherever found.   But it may have a being elsewhere, in another State, if given a status there by force of law. The State, which gave it birth, can give it no power to travel beyond the limit of that State, and can give it no rights or privileges away from home; and if no other State could adopt the child as its own, and confer powers and capacities upon it, and nurture it, there could be no help for it outside of its own State, and there it would have to remain, and could do no business elsewhere, and could sue and be sued nowhere else.

But the sensible and reasonable decision of the Supreme Court in *O. & M. R. Co.* v. *Wheeler*, obviates all this difficulty and shows, that a railroad corporation may have an existence in more than one State, if chartered or licensed to build its road and do business in moree than one.   If this were not true, the Baltimore & Ohio Railroad Co. would have been confined to the State of Maryland, and could have built no road outside of that State, and to-day it would be a pigmy instead of the giant that it is.   When a helpless infant only eight days old, it did not wish to be confined to the narrow limits of one State, and applied to Virginia to adopt it as her child, which she did, and while under the Maryland charter it could build less than one hundred and fifty miles of railroad, under the Virginia charter it has built nearly four hundred miles.  Now is it possible, that after this company has been for over half a century nurtured by the two Virginias, been permitted in their courts to condemn the lands of their citizens for its pur-

1881
Spring
Special Term.

The B. & O. R.
R. Co.
v.
The P. W. &
Ky. R R. Co.

Syllabus 22.

1881
Spring
Special Term.

The B. & O. R.
R. Co.
v.
The P. W. &
Ky. R. R. Co.

poses, permitted on nearly four hundred miles of their territory to lay its track, build station-houses, hotels and whatever else was requisite for its convenience, and barter and traffic with their citizens, it can be tolerated in the assertion, that it is a stranger to the State granting all these rights; that as to all business transacted and all its liabilities incurred it is not compelled to submit to the jurisdiction of the courts of the State granting all the favors it has received, but that it can drag the citizens of the State hundreds of miles from their homes to litigate their rights in the courts of another government? It is a fact, that it has not yet been settled, that the company has such right, and if it has, it is strange, that it has taken more than a half century to ascertain the fact.

In *B. & O. R. Co.* v. *Gallaher's adm'r*, 12 Gratt. 655, Allen, President, speaking for the whole court after referring to the act of March 8, 1827, said: "The company under this law is a Virginia corporation, and its powers within the territory of Virginia are derived from the grant contained in the Virginia law. The act of Maryland incorporated the subscribers to the capital stock, their successors and assigns, by the name designated; and the Virginia act in effect re-enacts it in all essential particulars, thereby erecting the company into a Virginia corporation within her territory. If liable to be sued in Maryland the same liability attaches to it in Virginia." If liable to be sued in Virginia it is only because it was a Virginia corporation, and if a Virginia corporation, when a controversy existed between it and a citizen of Virginia, such a suit cannot be removed into the Federal court. To the same effect is *Goshorn et al.* v. *Supervisors*, 1 W. Va. 308; *B. & O. R. Co.* v. *Supervisors*, 3 W. Va. 319. See discussion of the question in *Hall et al.* v. *Bank of Virginia et al.*, 14 W. Va. 618; *Kephart* v. *Mahaney*, 15 W. Va. 609.

In *Railroad Company* v. *Harris*, 12 Wall. 65, the plaintiff, Harris, sued the Baltimore & Ohio Railroad Co. in one of the courts of the District of Columbia for

1881
Spring
Special Term.
The B. & O. R.
R. Co.
v.
The P. W. &
Ky. R. R. Co.

an injury inflicted at Mannington, W. Va. The defendant pleaded to the jurisdiction,—1st, that the company was not an inhabitant of the District of Columbia, where the writ was served; and 2d, that the company was not found in the District of Columbia, when the writ was served. To the first plea the plaintiff replied, that the company was an inhabitant of the District of Columbia by virtue of certain acts of Congress, the dates and titles of which are set forth, and that it had accepted the provisions of these acts, and constructed its road under them, availing itself of the privileges thus conferred, and doing business under them in the District of Columbia. To the second plea he replied that the company was found within the District of Columbia, where the writ was served, and was within the jurisdiction of the court by virtue of the acts of Congress mentioned in the first replication. The company demurred to these replications. The demurrer was overruled, and the company then pleaded not guilty; the case was tried on the issue joined and verdict for plaintiff.

Thus the direct question was presented to the Supreme Court on writ of error, whether the Baltimore & Ohio Railroad Co. was an inhabitant of the District of Columbia by virtue of the acts of Congress granting it the right to construct, and operate its road there and therefore liable to be sued there. The court by Swayne, Justice, said: " In both (the acts of Virginia and the acts of Congress) the original Maryland act of incorporation is referred to, but neither expressly or by implication creates a new corporation. The company was chartered to construct a road in Virginia as well as in Maryland. The latter could not be done without the consent of Virginia. That consent was given upon the terms which she thought proper to prescribe. With a few exceptions, not material to the question before us, they were the same as to powers, privileges, obligations, restrictions and liabilities as those contained in the original charter. The provision

was broad and comprehensive in its scope, but it was a license and nothing more. It was given to the Maryland corporation as such, and that body was the same in all its elements and in its indentity as before. In its name, locality, capital-stock, the election and powers of its officers, in the mode of declaring dividends, and doing all its business its unity was unchanged. Only the sphere of its operations was enlarged.  *   *   *   * It cannot migrate but may exercise its authority in a foreign territory upon such conditions, as may be prescribed by the laws of the place.  *   *   * We see no reason why several States cannot by competent legislation unite in creating the same corporation, or in combining several pre-existing corporations into a single one.  *   *   * Nor do we see any reason, why one State may not make a corporation of another State, as there organized and conducted, a corporation of its own *quoad hoc* any property within its territorial jurisdiction.

"That this may be done was distinctly held *in Ohio and Mississippi Railroad Co.* v. *Wheeler.* It is well settled that corporations of one State may exercise their faculties in another on such terms and to such extent, as may be permitted by the latter. We hold, that the case before us is in the latter category. The question is always one of legislative intent and not of legislative power or legal possibility. So far as there is anything in the language of the court in the case of *The Ohio and Mississippi Railroad Co.*, v. *Wheeler,* in conflict with what has been here said, it is intended to be restrained and qualified by this opinion."

The opinion cites with approbation the case of *B. & O. R. Co.* v. *Gallaher's adm'r,* 12 Gratt. 655, and the cases in 1 & 3 W. Va. before cited in this opinion. Mr. Justice Swayne quotes with approbation the following from the case in 12 Grattan: "It would be a startling proposition, if in all such cases citizens of Virginia and others should be denied all remedy in her courts for causes of action arising under contracts and acts entered

into or done within her territory, and should be turned over to the courts and laws of a sister State to seek redress;" and then adds: "The same considerations apply to the case before us. When the suit was commenced, if the theory maintained by the counsel for the plaintiff in error be correct, however large or small the cause of action, and whether it was a proper one for legal or equitable cognizance, there could be no legal redress short of the seat of the company in another State. In many instances the cost of the remedy would largely exceed the value of its fruits. In suits local in their character, both at law and in equity, there could be no relief. The result would be to a large extent immunity from all legal responsibility. It is not to be supposed, that Congress intended, that the important powers and privileges granted should be followed by such results."

1881 Spring Special Term.

The B. & O. R. R. Co.
v.
The P. W. & Ky. R. R. Co.

Nor can it be supposed, that the Legislature of Virginia intended, that the far greater powers and privileges granted to the same company should be followed by such results. But Mr. Justice Swayne in the same connection further says: "But turning our attention from this view of the subject, and looking at the statute alone, and reading it by its own light, *we entertain no doubt, that it made the company liable to suit, where this suit was brought, in all respects as if it had been an independent corporation of the same locality.*" (The italics are mine.) If this be true, we need not differ as to whether the act of Virginia was a charter to the Baltimore & Ohio Railroad Co. or a license of the character described, the result would be the same in either case ; the effect would be to make it, *quoad* all its bearings, contracts, &c., in West Virginia, liable to suit here, the same as if it were a corporation of West Virginia.

The case of *Ohio & Mississippi Railroad Co.* v. *Wheeler* is modified by *Railroad* v. *Harris*, in a very important particular, and we think properly. That is that, the chartering of a corporation by another State, after it has received its charter from the first, does not create a

1881
Spring
Special Term.

The B. & O. R.
R. Co.

The P. W. &
Ky. R. R. Co.

separate and independent corporation in the second State. It is the same corporation; but it cannot get out of the State which gave it birth except by powers and privileges granted to it by other States; and when in this way it is permitted to extend its operations, in every State where it extends its road, *quoad* all litigation in that State it is to be regarded as a domestic corporation, and liable to suit there, " in all respects as if it had been an independent corporation " of such State. If it is liable to suit there, then it follows as a matter of course, that as to such suit it must be regarded as a domestic corporation, otherwise it could not be sued there, for consent in no case can give jurisdiction to a court. If it has not a residence in the State, where the suit is brought, the court has no jurisdiction, no matter what consent the corporation might give in the premises. If it is liable to suit in the State, it is because it is an inhabitant of the State, as decided by *Railroad Co.* v. *Harris*, and if it is an inhabitant of the State, when it is sued by a citizen of the same State, the case cannot be removed into the Federal court. This has been express-ly held in *B. & O. R. Co.* v. *Wightman's adm'r*, 29 Gratt. 431, and *B. & .O. R. Co.* v. *Noell's adm'r*, 32 Gratt. 394. These cases are the necessary result, of the cases of *Gal-laher's adm'r* v. *B. & O. R. Co.*, 12 Gratt., and *Railroad* v. *Harris*, 12 Wall. If these cases were correctly de-cided, then the late Virginia cases are necessarily cor-rect.

In the case of *Railroad Co.* v. *Whitton's adm'r*, 13 Wall. 270, it was said by Mr. Justic Field, who delivered the opinion of the court: " The plaintiff is a citizen of the State of Illinois, and the defendant is a corporation created under the laws of Wisconsin. Although a cor-poration being an artificial body created by legislative power is not a citizen within such provision of the Constitution, yet it has been held, and that must now be regarded as settled law, that where rights of action are to be enforced, it will be considered as a citizen of the

1881
Spring
Special Term.

The B. & O. R.
R. Co.
v.
The P. W. &
Ky. R. R. Co.

State where it was created within the clause extending the judicial power of the United States to controversies between citizens of different States. The defendant therefore must be regarded for the purpose of this action as a citizen of Wisconsin. But it is said, and here the objection to the jurisdiction arises, that the defendant is also a corporation under the laws of Illinois, and therefore is also a citizen of the same State with the plaintiff. The answer to the position is obvious. In Wisconsin the laws of Illinois have no operation. The defendant is a corporation and as such a citizen of Wisconsin by the laws of that State. It is not *there* a corporation or a citizen of any other State. Being there sued it can only be brought into court as a citizen of that State, whatever its status or citizenship may be elsewhere."

There is nothing in this case, contrary to the position we have assumed. The case is precisely, as if a citizen of West Virginia should sue the Baltimore & Ohio Railroad Co. in the Federal court in Maryland, or in the State court, and a removal should be asked. The answer would be: that the corporation as to that suit was a citizen of Maryland, and the plaintiff a citizen of West Virginia, and that therefore the Federal court had jurisdiction. The principle of the case in 13 Wall. is, that had the suit been brought in Illinois, the United States courts would not have had jurisdiction. To the same effect is *Muller* v. *Dows*, 4 Otto 444.

A number of insurance cases decided in the Supreme Court of the United States are cited and relied upon by counsel for plaintiff in error, which it seems to us are irreconcilable in principle with the railroad cases we have discussed, decided by the same court, unless the distinction is taken, that there is a wide difference between the charter or license of a railroad company to construct its road through a State, condemn land, build station-houses, occupy ground, and at all times abide, and do business in the State, and a mere license to an insurance company

1881
Spring
Special Term.

The B. & O. R.
R. Co.

The P. W. &
Ky. R. R. Co.

through an agent to insure property in the State. This distinction, it seems to me, has been taken by the Supreme Court, as in none of the insurance cases has the court overruled the decisions in the railroad cases. *Lafayette Insurance Co.* v. *French*, 18 How. 404; *Mo:se* v. *Insurance Co.*, 20 Wall. 445; *Doyle* v. *Insurance Co.*, 4 Otto 535; *Ex parte Schollenberger*, 6 Otto 369.

The hardship of regarding the Baltimore & Ohio Railroad Co. not liable to suit in the courts of West Virginia, as pointed out by Mr. Justice Swayne in *Railroad Co.* v. *Harris*, would be no less, if cases brought in the State courts against the company could be removed to the Federal court. It would in many cases amount to a denial of justice. For instance, an action is brought against the company in Jefferson county for a sum exceeding $500.00. The plaintiff is a poor man and has suffered an injury from the railroad; his witnesses reside in the county; he can without trouble secure their attendance there; he has some show of a speedy trial, for there are three terms of a State court in a year; but the case is removed into the circuit court of the United States. That court sits at Parkersburg, *three hundred* miles from the home of the plaintiff. The court sits but twice a year. He is compelled to pay the fare of all his witnesses on the defendant's road for three hundred miles, if he is able to do it; if not, justice is denied him. He may take them, once, twice or thrice, and the case may be continued. He has suffered in expense perhaps more than his claim will amount to. On the other hand, the railroad company transports its witnesses without charge at any time it pleases, and is actually reaping a profit out of the poor man, who is compelled to pay the railroad company for transporting his witnesses. If such is the law, it is harsh and unjust. It has not yet been so held; and it seems to me, it never can be.

I conclude therefore, that the Baltimore & Ohio Railroad Co. is a domestic corporation in West Virginia, and as such liable to be sued here; that when sued in

this State by a citizen thereof in a State court, such suit cannot be removed into the circuit court of the United States, as that court has no jurisdiction in such a case.

Since the submission of this case chapter 88 of the Acts of 1872–3, under which the condemnation was had, has been by section 74 of chapter 17 of the Acts of 1881, approved March 17, 1881, repealed. It is now here argued by counsel for plaintiff in error, that the effect of that repeal is to require this Court to reverse the judgment of the circuit court and dismiss the proceedings, as it is insisted, that there was no saving as to pending suits. Many authorities have been cited in support of the position, and among them *Curran* v. *Owens*, 15 W. Va. 208. Whether the repealing act shall have the effect to arrest proceedings in pending cases depends upon the intent of the Legislature. That intent must be gathered from the action of the Legislature itself, but not necessarily from the repealing act alone, but if it can be gathered from the passage of any act by the Legislature at the same session upon the same subject, that it was the legislative intent, that pending actions or proceedings should be saved, it is sufficient to effect that purpose.

The language used by this Court in *Curran* v. *Owens*, that the legislative intent in such cases must be gathered from the repealing act itself, must be understood as applying to the circumstances of that case. In that case there was no act passed at the session of the Legislature referred to upon the subject, except the act containing the repealing section; and the legislative intent was in that case necessarily gathered from the repealing act itself. At the last session of the Legislature, when the general incorporation law was passed, which contains the section repealing chapter 88 of the Acts of 1872–3, on the 12th of March, 1881, an act was approved, entitled: "An act to revive, amend and re-enact chapter 42 of the Code of West Virginia concerning the taking of land without the owner's consent for purposes of public utility, and to

repeal chapter 114 of the Acts of 1875." The 27th section of that act, which is chapter 18, is as follows: "This chapter as amended shall apply as well to cases for the condemnation of lands or materials or both *now pending in any court,* as to cases hereafter brought." It seems to me, that this section, although not as clear as it might be, indicates the legislative intent to save all pending suits for the purpose of the condemnation of lands; and must apply to this suit.

We deem it unnecessary to consider in this case the other interesting questions, as to the effect of repealing statutes upon pending suits, as the point we have decided disposes of the question raised in this case.

For the foregoing reasons the judgment of the circuit court affirming the judgment of the county court is affirmed with costs and $30.00 damages.

THE OTHER JUDGES CONCURRED.